**In re Claude C. RANCOURT, et al., Debtors.**

**In re Conrad L. DIONNE, Debtor.**

**Bankruptcy Nos. 90–11957 to 90–11964 and 90–10211.**

United States Bankruptcy Court, D. New Hampshire.

Jan. 18, 1991.

---

Edmond J. Ford, Sheehan, Phinney, Bass & Green, Manchester, N.H., for Numerica Sav. Bank.

Robert M. Koch, Concord, N.H., for Conrad Dionne.

William Gannon, Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, N.H., for Vanguard Sav. Bank.

Thomas O. Bean, Brown, Rudnick, Freed & Gesmer, for First New Hampshire Bank, Boston, Mass., Anne G. Scheer, Gallagher, Callaghan & Gartrell, Concord, N.H., for New Hampshire Sav. Bank.

John R. Michels, Michels & Michels, Londonderry, N.H., James Dillon, Goodwin, Proctor & Hoar, Boston, Mass., for Claude Rancourt.

## MEMORANDUM OPINION ON "RENTS AS CASH COLLATERAL" ISSUE

JAMES E. YACOS, Bankruptcy Judge.

In the above-captioned Rancourt case, the Court has pending for decision Fleet Bank's ("Fleet") "Motion to Limit Use of Cash Collateral Pending Motion for Relief From Stay" filed November 15, 1990. There is also pending Vanguard Savings

Bank's ("Vanguard") "Motion to Limit Use of Cash Collateral Pending Hearing on Motion for Relief from Automatic Stay" filed October 31, 1990. There is also pending in the Rancourt case the New Hampshire Savings Bank's ("Savings Bank") "Motion to Sequester Rents and Profits from Debtors' Premises" filed November 21, 1990. In the separate Dionne case there is pending Fleet Bank's "Motion to Limit Use of Cash Collateral Pending Motion for Relief From Stay" filed November 15, 1990, which was heard together with the motions in the Rancourt case raising the same issues.

The issue presented is whether mortgagees who hold a recorded prepetition mortgage against a chapter 11 debtor's real property, together with recorded instruments or provisions giving the mortgagee an assignment of the leases pertaining to the real property as "additional" or "conditional" collateral for the secured debt, reachable upon default by the mortgagor-borrower, where there is no showing that the mortgagee had taken possession and management of the real property in question prior to the bankruptcy filing, gives the mortgagee sufficient interest in the "rents" to trigger the extraordinary "cash collateral" provisions available to secured creditors in bankruptcy proceedings pursuant to §§ 363 and 552 of the Bankruptcy Code.

Since the question presented is one of first impression in this District, and will have a dramatic effect upon the dynamics of filing, negotiating, and formulating a plan of reorganization under chapter 11 of the Bankruptcy Code in real estate reorganizations—of which there are an unusual number in this district due to current economic conditions—the Court has conducted extensive hearings on November 8, 1990 and November 20, 1990, and a further oral argument after supplemental briefing on January 3, 1991. The Court has received excellent briefs on the issue presented, including an amicus curiae memorandum by Numerica Savings Bank.

All parties agree that except for the last proviso in § 552(b) of the Bankruptcy Code the mortgagees' property rights, if any, in the leases and rents involved are to be defined by state law under the seminal decision of the United States Supreme Court in *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979):

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609 [81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961)]. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

While the *Butner* case was decided under the prior Bankruptcy Act it has been held that its rationale applies equally under the present Bankruptcy Code.[1] See *Matter of Village Properties, Ltd.*, 723 F.2d 441, 443 (5th Cir.1984); *In re Kurth Ranch*, 110 B.R. 501, 505 n. 2 (Bankr.D.Mont.1990); *In re Multi–Group III, Ltd. Partnership*, 99 B.R. 5, 7 (Bankr.D.Ariz.1989).

The difficult problem for the courts in resolving this question stems from (1) the relative paucity of decisions under state law in some jurisdictions, here Massachusetts and New Hampshire, dealing with the nature and scope of a mortgagee's rights in rents in this situation; (2) the asserted differences between the treatment of what would be a "floating lien" concept with regard to personal property under the Uniform Commercial Code when that analysis

---

1. Arguably the safety valve feature "unless some other interest requires a different result" in the *Butner* case has now been codified in effect by the "except to any extent that the court ... based on the equities of the case, orders otherwise" proviso in § 552(b) of the present Code.

is transferred to the real estate field; and (3) a very large "red herring" of sorts that is brought into these cases when the mortgagee under a "belt-and-suspenders" approach tries to buttress its claim to cash collateral status by filing a "Section 546(b) notice" asserting a superfluous "perfection" of their security interest when that device is clearly inapplicable to this problem.

The latter spurious "perfection" issue has only served to skew analysis and has provoked an extensive and unnecessary conflict in the reported decisions in this area. See, e.g., *Virginia Beach Fed. Sav. and Loan Assoc. v. Wood*, 901 F.2d 849 (10th Cir.1990); *In re Colter*, 47 B.R. 1008 (D.Colo.1985); *In re Westport–Sandpiper Assoc. Ltd. Partnership*, 116 B.R. 355 (Bankr.D.Conn.1990); *In re Kurth Ranch*, 110 B.R. 501 (Bankr.D.Mont.1990); *In re American Continental Corp.*, 105 B.R. 564 (Bankr.D.Ariz.1989); *In re Harbour Town Assoc., Ltd.*, 99 B.R. 823 (Bankr.M.D. Tenn.1989); *In re Multi–Group III Ltd. Partnership*, 99 B.R. 5 (Bankr.D.Ariz. 1989); *In re Kearney Hotel Partners*, 92 B.R. 95 (Bankr.S.D.N.Y.1988); *In re TM Carlton House Partners Ltd.*, 91 B.R. 349 (Bankr.E.D.Pa.1988); *In re Gelwicks*, 81 B.R. 445 (Bankr.N.D.Ill.1987); *In re Fluge*, 57 B.R. 451 (Bankr.N.D.1985).

Indeed, while the briefs on this matter have been well-prepared and quite extensive on all possible issues raised by the question, the court's delay in taking further action on this matter is largely due to the Court not being able to focus at first on the real issues necessary for decision. In essence, the Court has been swimming around in a "school of red herring" supplied by all the interesting but irrelevant extraneous legal and metaphysical questions presented by the parties. With regard to the distinction often overlooked between "perfection" and "enforcement" of a security interest, see the excellent discussion by bankruptcy judge Volinn in *In re Park At Dash Point, L.P.*, 121 B.R. 850, 853–57 (Bankr.W.D.Wash.1990). See also *In re Metro Square*, 106 B.R. 584 (D.Minn.1989); *In re Foxhill Place Assoc.*, 119 B.R. 708 (Bankr.W.D.Mo.1990).

## KEY STATUTORY PROVISIONS

The pertinent provisions of the Bankruptcy Code (11 U.S.C. §§ 101 et seq.) bearing upon the question presented are as follows:

*§ 363. Use, sale, or lease of property.*

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

\*　　\*　　\*　　\*　　\*　　\*

(c)(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

\*　　\*　　\*　　\*　　\*　　\*

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

\*　　\*　　\*　　\*　　\*　　\*

*§ 552. Postpetition effect of security interest.*

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this

title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

## RENTS AS CASH COLLATERAL

The Court has reviewed the extensive case law cited by the parties on the basic question raised by the claim that the mortgagees hold a "cash collateral" interest in the rentals from the properties involved entitling them to the special protections provided by the Bankruptcy Code with regard to that type of collateral. Unfortunately, many of the decisions are not helpful in my view in that they involve irrelevant issues as indicated above. For my part, the findings and conclusions of this Court on the basic legal issue, applicable to all motions in both cases, are as follows:

■ (1) The recording pre-bankruptcy by a mortgagee lender of the realty mortgage, and/or any separate document giving an assignment of leases and rentals pertaining to the real property mortgaged, does give the mortgagee an effective security interest in "rents" as a type of collateral as opposed to a security interest in specific rent payments.

■ (2) The recording of such documents gives the mortgagee rights superior to any subsequent third party who would seek to take a security interest in the leases and rentals pertaining thereto as a type of collateral.

■ (3) With regard to the mortgagor or any third party who deals with specific rental payments in hand before the mortgagee acts to take over possession and management of the premises, the mortgagee's security interest in rents, being contingent upon default, and assertion by possession, is not superior to the mortgagor or any third party in that context.

■ (4) Whether a state is a "title theory state" or a "lien theory state" in the realty-mortgagee context makes no difference with regard to a mortgagee whose rights to rents are conditional upon default, and who is seeking to assert a security interest not as to rents as a type of collateral, but in terms of reaching specific accrued and future rent payments, under modern law. At least in Massachusetts and New Hampshire this is clear, see *In re Prichard Plaza Assoc. Ltd. Partnership,* 84 B.R. 289 (Bankr.D.Mass.1988) (Massachusetts law), and any question in other states on the title theory concept and the state law involved is largely a question of antiquities rather than present case law development. The fact that the concept has to be labeled as a legal principle arising in a "title *theory* state" says all that needs to be said about the reality of this situation.[2]

---

**2.** Concepts of "title" as a dispositive factor in determining legal rights proved entirely unsatisfactory in the personal property field and resulted in the abandonment of that concept in the Uniform Commercial Code. Its existence in real property matters stems largely from economic, cultural, and feudal property law concepts that existed in the Middle Ages but have no continuing relevance, as is pointed out by Bankruptcy Judge Merrick's superb discussion in *Matter of Michigan Avenue National Bank,* 2 B.R. 171, 174–180 (Bankr.N.D.Ill.1980). I will only add to that discussion that essentially what happens in a "lien theory" state in this context is that the mortgagor holding ownership of the real property (which has been likened in the past to the holding of a "bundle of sticks" representing all the various interests that can be held in real property) allows the mortgagee to put a finger on the string holding the bundle together pending any default; in the "title theory" state the mortgagor unties the bundle and gives the mortgagee the string to hold but otherwise the mortgagor still has the entire bundle in his arms until default. If, as here, that is all that "title" in the mortgagee represents, the courts do not give any dispositive weight to that factor.

■ (5) The fact that the mortgagee can't enforce his security interest in specific rents prior to taking over possession and management of the rental premises does not destroy the legal existence of an effective security interest in rents as a type of collateral held by the mortgagee at the time of the recording of the pertinent documents. Cf. *In re Park At Dash Point, L.P.,* 121 B.R. 850 (Bankr.W.D.Wash.1990).

■ (6) The rule that a mortgagee cannot collect rents notwithstanding the existence of a security interest in rents as a type of collateral, even though default may have occurred, without taking over possession and management of the rental premises stems from the common sense observation that "rents do not spring from the ground" and that if the mortgagee seeks to collect the rents the mortgagee must likewise undertake the responsibilities and liabilities of management and operation of the business premises to justify receiving future rent payments. Cf. *In re Prichard Plaza Assoc. Ltd. Partnership,* 84 B.R. 289, 298 (Bankr.D.Mass.1988). To do otherwise would in effect have the mortgagor act as an indentured servant acting for the mortgagee in operation of the business while allowing the mortgagee to take the fruits of the mortgagor's continuing efforts without any of the liabilities. Neither the Massachusetts nor the New Hampshire courts would permit this.[3]

■ The concepts of choateness or inchoateness are not useful in resolving the issue presented in this case. To the extent that this Court's alternative decisional comments in its decision in *In re Public Service Company of New Hampshire,* 88 B.R. 563, 565–566 (Bankr.D.N.H.1988), are to the contrary I will recede from those comments in this or any comparable context. See also *In re Park At Dash Point, L.P.,* 121 B.R. 850, 856 (Bankr.W.D.Wash.1990) (referencing 1989 statutory amendments in Washington to correct "misleading discussion and caselaw suggesting that a security interest not as yet enforced or 'choate' is unperfected").

■ (8) The inevitable conclusion from the foregoing is that the mortgagee's rights with regard to rents as a type of collateral is an "interest" in property within the meaning of § 363(a) of the Bankruptcy Code, and is a "security interest [that] extends to ... rents ... to the extent provided by [the] security agreement and by applicable nonbankruptcy law...." within the meaning of § 552(b) of the Bankruptcy Code. That being so the rights of the mortgagees in the present cases, with regard to rents relating to the mortgaged properties, are "cash collateral" under the Bankruptcy Code.

(9) The conclusion set forth in the preceding paragraph is also inescapable since this Court can see no principled way to support a ruling that the mortgagees involved in the present matter have no "cash collateral" security interest in rents, simply because prebankruptcy they did not have any *effectuated* right to *collect* specific rent payments, when no court has held, or would hold, that a secured creditor with a perfected "floating lien" security interest in account receivables and other revolving types of collateral would not be entitled to § 363 cash collateral protection simply because there had been no default or effort to collect specific items of collateral prior to the bankruptcy proceeding. While it can be argued that the real estate area of law does not explicitly recognize the floating lien concept, as does the Uniform Commercial Code, it appears to me that the essential elements of the commercial transactions in question are the same and that the rulings therefore should be the same, in the absence of explicit authority to the contrary under the applicable state law. I believe the trend in all states is in this direction.

### THE § 546(b) NOTICE DEVICE

■ The determination that the mortgagees have "cash collateral" rights under

---

**3.** Arguably a mortgagee in such a situation might be deemed to have the debtor as its agent in operating the premises and thereby incur liability for the operation and condition of the premises. However this is currently a much litigated area of law and no definitive conclusion is available or necessary for present purposes.

§ 363 of the Bankruptcy Code makes it unnecessary for the court to rule on the alterative contention by the mortgagees, to the effect that even if they had no perfected security interest in rents at the time of bankruptcy they can cure that problem by their § 546(b) notices. However, if that issue were necessary for decision in this case, and for purposes of judicial economy in the event of an appeal, I will state that I believe by far the better reasoned cases on this issue reach the result that § 546(b) is not applicable for that purpose and never was intended to be so. Section 546 was intended to cover only the situation where under *applicable nonbankruptcy law* there is provision for a "relation-back" perfection of a claimed security interest to a date or event that occurred pre-bankruptcy, *and which would have the legal result of priming any intervening claims of third parties.*[4] See, e.g., *Virginia Beach Fed. Sav. and Loan Assoc. v. Wood*, 901 F.2d 849 (10th Cir.1990); *In re Westport–Sandpiper Assoc. Ltd. Partnership*, 116 B.R. 355 (Bankr.D.Conn.1990); *In re Kurth Ranch*, 110 B.R. 501 (Bankr.D.Mont.1990); *In re Harbour Town Assoc., Ltd.*, 99 B.R. 823 (Bankr.M.D.Tenn.1989); *In re Multi–Group III Ltd. Partnership*, 99 B.R. 5 (Bankr.D.Ariz.1989); *In re Kearney Hotel Partners*, 92 B.R. 95 (Bankr.S.D.N.Y.1988); *In re TM Carlton House Partners, Ltd.*, 91 B.R. 349 (Bankr.E.D.Pa.1988). There clearly is no such provision under Massachusetts or New Hampshire real property law and the case decisions elsewhere, regardless of whether they see § 546 applicable or not, are almost uniformly to the effect that if a § 546(b) notice is to be given any "perfection" effect it will only pertain to rent payments accruing on or after the date of the § 546 notice. See, e.g., *In re American Continental Corp.*, 105 B.R. 564 (Bankr.D.Ariz.1989); *In re Gelwicks*, 81 B.R. 445 (Bankr.N.D.Ill.1987). In my view, the mortgagee's appropriate remedy in this regard is not § 546 but simply a motion under § 362 to have the automatic stay lifted to permit the mortgagee to move not only to foreclose but also to obtain possession of the mortgaged premises and thus effectuate its right to collect rents under applicable nonbankruptcy law.

### THE § 552(b) CUTOFF PROVISO

The foregoing portions of this opinion were released earlier, on December 7, 1990, as part of an interim order making partial findings and conclusions with regard to this matter. In that order the Court directed that the parties brief an additional question as to whether, even if the rents in question were defined as cash collateral pursuant to § 363 of the Bankruptcy Code, they nevertheless might not reach postpetition rents if the "equities of the case" required otherwise pursuant to the last proviso in § 552(b) of the Code.

Supplemental briefing and a further oral argument on January 3, 1991 was had on this additional question which had not been raised by any of the parties. As it happens, it is again unnecessary for the Court to determine that issue, in this case, and in view of the conclusions of the Court with regard to adequate protection pertinent to the present motions developed below.[5]

4. Some of the reported decisions talk in terms of "perfecting" rights against the mortgagor itself. However, it is elementary that perfection as a legal concept has to do with protecting the secured claimant from claims by subsequent intervening third parties. As between the parties to a security agreement the agreement is always valid as between the parties to the contract themselves. This includes the security interest granted therein. If these simple legal truths are kept in mind the analysis of the question at issue becomes much clearer.

5. The Court had framed the § 552(b) question in its December 7, 1990 Order as follows:
"ORDERED that among other issues to be addressed at the continued hearing on the cash collateral question the parties shall address a possible ruling by this Court to the effect that under § 552(b) of the Bankruptcy Code the 'equities of the case' factor involving these real estate reorganizations would justify the Court in ordering that the security interests in rents here involved should not reach post petition rents paid to the debtor in reorganization until and if the mortgagee in question successfully obtains an order lifting the automatic stay imposed by § 362 permitting foreclosure and taking possession of the premises, or alternatively some shared liability for the business operation generating the

However, inasmuch as the question of control of rents immediately following a chapter 11 real estate reorganization case filing is a recurring problem in this District, and in view of current caseload involving many such cases, the Court will note the concerns which prompted it to raise the issue itself.[6]

The decision in the *Butner* case to the effect that the mortgagee's property rights should be no different just because of the "happenstance of bankruptcy" cuts both ways. While the mortgagee should not have any *lesser* property interest because of the bankruptcy filing, it would equally violate the *Butner* standard to give the mortgagee *greater* rights in the rentals than it would have absent a bankruptcy filing. As indicated above, the "unless some federal interest requires a different result" proviso in *Butner* arguably could be equated with the "equities of the case" proviso in § 552(b) of the subsequent 1978 Bankruptcy Code.

A mortgagee who comes into the bankruptcy and asserts a right to control the use of specific rent payments, including ultimately the payment over of such payments to reduce its secured debt, without itself taking over possession and operation of the premises, with all the attendant liabilities pertaining thereto in this age of CERCLA toxic waste liabilities and personal injury damage awards, arguably would in fact be given greater rights than otherwise would obtain absent a bankruptcy.

The question therefore arises under § 552(b) as to whether an admitted cash collateral interest should be permitted to reach post-petition rent payments where that in effect would give the mortgagee greater property rights than it would otherwise have, under state law, in violation of

post petition rents that might be construed as quasi-possession sufficient to trigger the mortgagee's rights to specific rent payments under nonbankruptcy law in the context of a chapter 11 proceeding."

It is particularly appropriate to avoid reaching the § 552(b) question in the present case, in view of the *Cross Baking* decision in this Circuit, discussed *infra,* and considering the prospect that there may be further caselaw development of the scope of the "equities of the case" concept before such time as this Court may be required to deal with the issue.

the *Butner* case ruling. It should be remembered that in the *Butner* decision it was pointed out that the court of appeals decision being reviewed did not attempt to identify any federal interest that might authorize some departure from state law property concepts.

A dilemma, therefore, is presented to a reorganization court trying to effectuate the mortgagee's state law property law rights, while also trying to provide the chapter 11 debtor the short breathing space necessary to operate its business free from distraction, and to get its affairs in order preparatory to the formulation of a plan of reorganization, contemplated by the Bankruptcy Code. That dilemma itself could perhaps justify some appropriate restriction pursuant to § 552(b) in allowing the mortgagee's cash collateral rights to reach post-petition rents. It may be that bankruptcy courts simply cannot implement chapter 11 reorganizations, involving real property assets, in terms of the underlying rationale of the present Code favoring consensual reorganizations, if an oversecured mortgagee's cash collateral rights in the first weeks of the proceeding are allowed to freeze the debtor's cash flow and business operation unless the debtor agrees to the control and direction of the mortgagee.

While the mortgagees speak only in terms of seeking adequate protection for their cash collateral rights that contention is somewhat disingenuous since, unlike receivables or other types of UCC floating lien collateral, rentals stemming from a single-asset real property reorganization implicates, in terms of adequate protection, the entire business operation of the debtor in question.[7] Moreover, even in the in-

6. In any future cases the better practice in any event would be for the debtor to move immediately for any determination with regard to § 552(b) at the outset of the case if that issue is to be interjected into the proceeding.

7. It should also be noted that rents as cash collateral involve the additional dimension of the equity cushion, if any, in the underlying real property involved, which is normally addressed in considering a motion to lift the § 362 automatic stay. Such motions must be heard by the court within 30 days after filing by the mortgag-

stance of a debtor having multiple assets, and other sources of cash flow, a case can be posited in which realization of the intrinsic values of the other assets, which may be the primary source for any ultimate distribution to general unsecured creditors under a plan, would justify at least temporarily using the rents from a clearly oversecured property in aid of the realization of maximum value from the other assets. The realization of intrinsic values of all assets in the reorganization in such a case could be frustrated in such a case if the reorganization court has no flexibility under the § 552(b) proviso.[8]

It is also disingenuous of the mortgagees to suggest that sustaining their position as to the effect of their cash collateral position, in reaching post-petition rents from the moment of the bankruptcy filing, does not involve a demand to have the rents turned over to them but only restrictions placed upon their usage. If the mortgagee's rights regarding rents as cash collateral *must* reach post-petition rents from the moment of filing, that principle once established will arguably totally change the dynamics of negotiation with regard to the target of a consensual plan of reorganization and will support a subsequent demand for turnover of rents (or a replacement lien) relating to all rents collected from the moment of the bankruptcy filing. It may be that the § 552(b) proviso can be construed as an "escape valve" for a court presented with the dilemmas outlined above.

The Court is aware of the restrictive reading of § 552(b) of the Code, in a differ-

ent context, by the First Circuit Court of Appeals in *In re Cross Baking Co.,* 818 F.2d 1027, 1032–1034 (1st Cir.1987). In the context presently before this Court a more expansive reading of the § 552(b) proviso exists. See *Saline State Bank v. Mahlock,* 834 F.2d 690, 695 (8th Cir.1987). It is not clear that the decision in *Cross Baking* would preclude all other usages of the § 552(b) proviso, apart from the "enhancement of value" reading that is given in that decision.[9]

## NECESSARY ADEQUATE PROTECTION

From the record before this Court regarding the rental properties still in contention on the "cash collateral" issue, the debtor has made a clear showing of substantial equity in the underlying real properties, sufficient to cover the respective movants' secured debts for a period of at least several months into this chapter 11 reorganization proceeding. The secured creditors have really raised no dispute in that regard.[10] Moreover, under mandatory provisions of § 362(e) of the Bankruptcy Code, the Bankruptcy Court is required to hear motions for relief from the automatic stay imposed by § 362 within 30 days from the filing of such motions, and must commence a final hearing on any such motion within a further 30 days if the initial hearing is conducted as a preliminary hearing.

Under the provisions of § 362(d) of the Code, the Bankruptcy Court is required to grant relief from the automatic stay, in a case involving stay against an act against

---

ee under mandatory provisions of the present Bankruptcy Code.

**8.** In the present case all movant mortgagees involved, while suggesting different degrees in types of restrictions upon use of rents, agree upon one central tenet, i.e., that in no event should rentals be permitted to be used for any purposes other than those strictly related to maintenance, preservation, and operation of the subject properties.

**9.** At a minimum it would seem that the "equities of the case" should require that the attachment of security interest in rents reaching postpetition rents should be subject to an appropriate "winding-down" protection for trade suppliers, employees, etc. relating to the subject property

in the event the reorganization effort fails, leaving those parties unpaid from unencumbered assets.

**10.** With regard to a number of properties subject to the original motions, in which the mortgagees have no substantial equity cushion in the underlying real property, or in which the individual debtor's case will be converted to chapter 7, the parties have during the course of the proceedings agreed to stipulated orders either granting relief from the automatic stay or conditioning the use of the rentals with various restrictions pertaining to the maintenance and operation of the particular property.

property, if the secured creditor shows that there is no equity in the property involved and the debtor fails to meet its burden of showing that the property is necessary to an effective reorganization. The latter requirement requires a showing of a reorganization in prospect. See *United Savings v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988) (effective reorganization in the statute means "reorganization *that is in prospect. . . .* a reasonable possibility of a successful reorganization within a reasonable time").

In the present case, on its particular facts, the issue before the Court really comes down to the question as to whether the movants are entitled *at this early stage of the case* to prohibitions or conditions upon the use of rents "as is necessary" to provide them adequate protection pursuant to § 363(e) of the Bankruptcy Code. It is obvious that the movants are in no real danger at this stage of not being covered in full with regard to their secured debt. This is true because rentals, uniquely among cash collateral categories, have the additional dimension of the real property mortgage reaching an equity cushion in the underlying real property to safeguard the secured debt. In my view the language "as is necessary" in § 363(e) can appropriately be construed to take into account the unique situation of rents—as distinguished from the other types of cash collateral which have no such underlying protection.

The movants argue that "once the rents are used they're gone" and that is true. However, the use of the rents by a debtor attempting to reorganize its financial affairs does not mean that the real property itself is gone. In the present case that underlying collateral remains and provides the movants with more than sufficient adequate protection to cover their secured debts for present purposes. It is true that no court to date has focused upon the "as is necessary" language in § 363(e) in the manner here employed, but it is also true that no court has been called upon to interpret that specific language in this context of the "rents" category of cash collateral.

It must be remembered that the present controversy, while the subject of extremely spirited and energetic arguments put forward by the mortgagees and the debtors, really has to do only with the first month or two of the reorganization proceeding, and then only in terms of procedural and negotiating advantages sought by the respective parties with regard to the ultimate shaping of a reorganization plan. If on "Day One" of a reorganization proceeding the debtor is required to provide "dollar-for-dollar" cash or replacement lien protection for its use of its rents, or detailed restrictions upon usage of its rental cash flow, notwithstanding a substantial equity cushion in the underlying real property, that result will mean, as is true here, that real estate companies seeking reorganization will be denied desireable flexibility necessary to achieve feasible reorganization plans designed to realize the maximum intrinsic value from their properties.

Debtors in real estate reorganization cases have many other things to do on "Day One" after their bankruptcy court filing besides responding to detailed demands by mortgagees as to how they will use essentially all their cash flow and conduct their business during their reorganization effort.[11] In my judgment, if the debtor makes a showing with regard to the usage of rents as cash collateral that the mortgagee involved has a clear equity

---

11. The contention by the mortgagees that rents can be used only for maintenance and operation of the particular property involved, notwithstanding any equity cushion present, arguably would mean that the debtor could not pay for legal, accounting and other services that may be necessary to the reorganization effort. If the mortgagees counter that they would not be adverse to "reasonable" fees and expenses for the reorganization effort, subject to their veto if the amounts involved are not reasonable in their view, that heavy thumb laid upon the debtor and its professionals at the outset of the case clearly would alter the dynamics of negotiation of consensual reorganization plans in a way that I believe Congress never intended by enacting the special "cash collateral" protective provisions in § 363 of the Code. Again, it must be emphasized that *rents* simply are different than the other types of cash collateral referred to in the statute.

cushion in the underlying real property, as these debtors have done, supporting a surface determination to that effect by the Court sufficient to get the case to the more structured and mandated 30 or 60 day hearings on relief from automatic stay, as indicated above, the reorganization Court may appropriately interpret the "as is necessary" language in § 363(e) to deny requests by mortgagees for specific restrictions and conditions upon the use of rents for that relatively short interim period. This will effectuate the goal of the present Bankruptcy Code to foster negotiated, consensual reorganizations.

### CONCLUSION

Pursuant to the foregoing findings and analysis, the Court concludes that the pending motions, as they relate to rental properties still in contention between the parties, should be denied and the debtors should be authorized usage of the rents involved free of restriction. Such denial and usage authorization is of course without prejudice to redetermination of adequate protection requirements, both as to the rentals and the underlying real properties involved, in the forthcoming hearings scheduled with regard to the motions for relief from the automatic stay by these movants, or in any subsequent stage of these proceedings in which such relief may be warranted.