### In re CERRICO REALTY CORPORATION, Debtor.

**Bankruptcy No. 190–15620–260.**

United States Bankruptcy Court, E.D. New York.

May 10, 1991.

320

Joseph D. Simon, Cullen & Dykman, Garden City, N.Y., for Roosevelt Sav. Bank.

Alexander Arandia, Curi & Arandia, Flushing, N.Y., for debtor.

## DECISION ON MOTION TO DISMISS OR DETERMINATION AND SEGREGATION OF CASH COLLATERAL

CONRAD B. DUBERSTEIN, Chief Judge.

Roosevelt Savings Bank (the "Bank") moves this Court for an order dismissing this Chapter 11 case or in the alternative for an order determining that rentals for 217–04 Northern Boulevard, Bayside, New York (the "Northern Boulevard Property")

and 199–03 32nd Avenue, Bayside, New York (the "32nd Avenue Property", collectively the "Properties") constitute cash collateral, requiring Cerrico Realty Corporation (the "Debtor" or "Cerrico Realty") to segregate the rents and render monthly reports thereof to the Bank and to use such rentals only upon the further order of this Court, and requiring the Debtor to make periodic payments to the Bank as adequate protection during the pendency of the Chapter 11 case. For the reasons set forth below the Bank's motion is granted in part and denied in part.

## FACTS

The Debtor is the owner of the Properties. The Northern Boulevard Property consists of a first floor retail space and a second floor complex of individual offices. The 32nd Avenue Property is designed for use as an office building. The Bank alleges and the Debtor does not contest that both Properties are almost fully occupied by tenants.

The Bank holds a first mortgage dated February 11, 1987 with an original principal balance of $1,000,000 on the Northern Boulevard Property and a first mortgage dated July 14, 1989 with an original principal balance of $573,750 on the 32nd Avenue Property. Cerrico disputes the amounts presently owed to the Bank under the terms of the two mortgages (the "Mortgages").

Clauses 32 of both Mortgages are identical and grant the Bank a security interest in rents, issues and profits from the Properties. The clause states that the Debtor assigns to the Bank "as further security for the payment of the indebtedness secured hereby, the rents, issues and profits of the Premises, together with all leases and other documents evidencing such rents, issues and profits now or hereafter in effect and any and all deposits held as security under said leases...." The clause also entitles the Bank (i) to enter upon and take possession of the premises for the purpose of collecting rents, issues and profits, (ii) to dispossess any tenant defaulting on payment to the Bank (iii) to let the

premises, or any part thereof, and (iv) to apply rents, issues, profits, after payment of all necessary charges and expenses, on account of said indebtedness. The assignment and grant are to continue in effect until the indebtedness is paid in full.

However, clause 32 goes on to say that the Bank waives its right to enter upon and take possession of the premises for the purpose of collecting rents, issues and profits until the occurrence of a default by the Debtor. The clause authorizes the Bank to revoke its waiver after the Debtor has defaulted by giving not less than five (5) days written notice of such revocation, served personally upon or sent by registered or certified mail to the record owner of the Premises. The Debtor maintains that it has not received such notice.

In addition to the security interest given to the Bank in clause 32, clause 19 of the Mortgages grants the Bank an assignment of rents if the Debtor defaults, in which event it shall be lawful for the Bank to enter upon and take possession of the premises, with or without the appointment of a receiver, and to let the premises either in its own name or in the name of the Debtor, receive the rents, income or profits of the premises and apply the same, after payment of all necessary expenses, on account of the amount of indebtedness. Finally, in the event of any such default the Debtor will transfer and assign to the Bank the Debtor's interest in any space lease now or hereafter affecting the whole or any part of the premises. The clause also restricts the Debtor from assigning rents, income or profits from the premises without the written consent of the Bank.

Prior to the commencement of this case in bankruptcy, in light of the Debtor's default the Bank enforced the assignment of rent provisions by having a receiver of rents appointed for each of the two Properties in an action commenced in the Supreme Court of the State of New York, Queens County. The orders appointing the receivers for the Northern Boulevard Property and the 32nd Avenue Property were entered on October 15, 1990 and November 1, 1990.

On December 13, 1990, Cerrico Realty filed a petition for relief under Chapter 11 of the Bankruptcy Code. Subsequently the Bank made the instant motion, pursuant to which a hearing was held by this Court on March 19, 1991.

## DISCUSSION

### 1. The Rents Constitute Cash Collateral

The first issue which confronts this Court is whether the rents flowing from the Properties constitute cash collateral as defined by section 363(a) of the Bankruptcy Code, by virtue of the security interest in the rents provided to the Bank as set forth in the Mortgages.

Two provisions of the Bankruptcy Code, Sections 363 and 552 are applicable to any discussion of cash collateral. Section 363(a) of the Code defines cash collateral as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest." Under section 363(c)(2), a debtor may not use cash collateral unless an entity that has an interest in it consents or such use is authorized by the court after notice and a hearing.

Section 552(b) of the Bankruptcy Code addresses the enforceability of pre-petition liens on certain after acquired property and provides that when "the prepetition security agreement covering prepetition property extends to proceeds, rents and the like, the terms of the security agreement and 'applicable nonbankruptcy law' will be enforced against proceeds, rents and the like, acquired after the date of the filing of the petition, 'except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.' " 4 COLLIERS ON BANKRUPTCY 552–4 (L.P. King 15th ed. 1989).

The Debtor argues that the security agreement only grants the Bank an interest in the real property and does not operate as a security interest in the rents. Furthermore, the Debtor contends that an interest in the rents would only arise, as per the terms of the Mortgages, after a default

and after the Debtor was served with five (5) days written notice of the Bank's decision to revoke its waiver of the right to collect rent on the Properties.

 This Court disagrees with the Debtor's interpretation of the provisions of the Mortgages. Clause 32 clearly grants the Bank a security interest in the rents, issues and profits of the Properties. The Bank's waiver of its right to collect the rents until an event of default occurred and the requirement that the Debtor be given notice of the Bank's revocation of its waiver, does not constitute a condition precedent to the attachment of the Bank's security interest in the rents but is merely a mechanism which allows the Debtor to collect and use the rents unless and until the Bank chose to exercise its right to collect the rents itself. The Bank's security interest in the rents is an interest in property that exists separate and apart of its right to revoke its waiver to collect and use the rents. Since the Bank has an interest in the rents, issues and profits of the Properties, the rents constitute cash collateral as defined in Section 363(a) of the Code.

In *In re Pine Lake Village Apartment Co.*, 16 B.R. 750, 8 B.C.D. 736 (Bankr.S.D. N.Y.1982) the debtor argued that if the mortgagee consented prepetition to the debtor's use of cash collateral and nothing by way of default of that agreement had occurred to nullify such consent, no provision of the Bankruptcy Code interferes with the continued validity of the secured party's agreement allowing the debtor to use cash collateral. Judge Schwartzberg rejected the debtor's argument stating:

> This position elides the point that the concept of cash collateral is a feature of and defined in, the Bankruptcy Code and is operative only after the commencement of a bankruptcy case under title 11 U.S.C. Whatever rights and obligations existed between the parties as to the use of cash collateral before the commencement of the case are subject to the provisions under Code section 363(c)(2). . . . Therefore, regardless of the prepetition conduct of the parties, Code section 363(c) imposes immediately ascertainable rights and restrictions as to cash collateral following the commencement of a bankruptcy case. A consent that was given before the expectation of a bankruptcy case cannot be treated as a continuing consent after the filing of a petition for relief under the bankruptcy Code. The consent to the use of cash collateral contemplated under Code section 363(c)(2)(A) must, of necessity, be regardless as a post-petition consent. Indeed, subsection (A) employs the present tense, "consents" and not the past tense, "consented" or "has consented". Even if the operative prepetition document containing the so-called consent were not in default at the commencement of the case, such a consent would certainly not permit a trustee in a Chapter 7 bankruptcy case who is authorized under Code section 721 to operate a debtor's business, to continue to use cash collateral without thereafter obtaining either the secured party's consent or appropriate authorization from the court. Code section 363 should apply in the same fashion in a Chapter 11 case, since Code section 103(a) directs that chapter 3 (in which code section 363 is contained) applies with equal force in chapter 11 as in Chapter 7. *In re Pine Lake Village Apartment Co.*, 16 B.R. at 756.

This Court adopts the thinking of Judge Schwartzberg. It is the opinion of this Court that even though the Bank consented to the Debtor's use of the rents pre-petition by waiving its rights to collect the rents, the Debtor must obtain the consent of the Bank or the permission of this Court before it makes any further use of the cash collateral. As Judge Schwartzberg points out, the Debtor would have to obtain a secured party's consent to use cash collateral even if there were no default in the agreement granting that entity a security interest. In the instant case, there is no argument that the Debtor defaulted on the underlying Mortgages entitling the Bank to revoke its waiver of its right to collect rent. The Debtor defaulted by missing several months of mortgage payments prompting the Bank to commence foreclosure proceedings and obtain orders appointing receivers

for the two Properties. The fact that the Bank did not give the Debtor the requisite five days notice that it was revoking its waiver, does not alter the fact that the rent is cash collateral and hence the Debtor must obtain the Bank's consent or the permission of this court before using those funds.

Even if the rent were not deemed cash collateral pursuant to the language contained in clause 32 of the Mortgages, the Bank would have a security interest in the rents by virtue of the fact that it had receivers appointed to collect rents for both Properties pursuant to the assignment of rents provision contained in clause 19 of the Mortgages.

The Debtor argues that the Bank is stayed from proceeding to collect the rents with or without the appointment of a receiver, as such action would constitute the enforcement, against the Debtor or against property of the estate, of a judgment obtained before the commencement of the case in violation of section 362(a)(2) of the Code or would constitute an act to obtain possession of property of the estate or to exercise control over property of the estate and is therefore prohibited by section 362(a)(3) of the Code. The Debtor does not take issue with the fact that clause 19 constitutes a valid assignment of rents.

> In New York, the assignment of rents clause in a mortgage is not self executing upon default. It operates as a pledge of rents to which the pledgee becomes entitled only after the pledgee asserts his right by taking affirmative steps such as requesting the Court to give him possession of the premises, or requesting the Court for an appointment of a receiver for the benefit of the mortgagee or obtaining an order from the Court for the sequestration of the rents.... A mortgagee with a rent assignment has an equitable right to collect, but does not have legal title to rents automatically upon default. Rent is an incident of title which in New York remains in the mortgagor after default and which cannot be conveyed by a rent as-

signment clause in a mortgage prior to a foreclosure

\* \* \* \* \* \*

> Under State law, the request for the appointment of a receiver is enough to vest the right to rents and profits and it is not the actual appointment by the Court that vests rents and profits. *In re Flower City Nursing Home, Inc.*, 38 B.R. 642, 645 (Bankr.W.D.N.Y.1984).

In this case the Bank secured the appointment of a receiver of rents for each of the two Properties during the course of its foreclosure proceedings in October and November of 1990. The appointment of the receivers vested the Bank's rights to the rents, issues and profits. Hence the Bank has an enforceable security interest in the rents, issues and profits of the two Properties.

In the recent case of *In re Rancourt*, 123 B.R. 143, 21 B.C.D. 494 (Bankr.D.N.H. 1991), Judge Yacos came to the conclusion that the pre-bankruptcy recording of a real property mortgage containing a provision for the assignment of rentals gave the mortgagee an effective security interest in rents as a type of collateral regardless of whether there had been any effort to collect rents pre-bankruptcy and regardless of whether the applicable state law adopts a lien theory or title theory of mortgages.

In *Rancourt*, the issue presented to the court was whether a mortgagee who held a mortgage against a chapter 11 debtor's real property, together with instruments granting the mortgagee an assignment of the leases as additional collateral for the secured debt, all of which were recorded prior to the bankruptcy, gave the mortgagee sufficient interest in the rents to trigger the extraordinary cash collateral provisions available to secured creditors pursuant to sections 363 and 552 of the Code where there was no showing that the mortgagee had taken possession or managed the property in question prior to the bankruptcy filing.

In reaching its conclusion that concepts of lien or title theory and choateness or inchoateness are irrelevant to the determi-

nation of a mortgagee's interest in rents or profits, Judge Yacos stated:

> [T]his Court can see no principled way to support a ruling that the mortgagees involved in the present matter have no "cash collateral" security interest in rents, simply because prebankruptcy they did not have any effectuated right to collect specific rent payments, when no court has held, or would hold, that a secured creditor with a perfected "floating lien" security interest in account receivables and other revolving types of collateral would not be entitled to section 363 cash collateral protection simply because there had been no default or effort to collect specific items of collateral prior to the bankruptcy proceeding. While it can be argued that the real estate area of law does not explicitly recognize the floating lien concept, as does the Uniform Commercial Code, it appears to me that the essential elements of the commercial transactions in question are the same and that the rulings therefore should be the same, in the absence of explicit authority to the contrary under the applicable state law. *In re Rancourt*, 123 B.R. 143 (Bankr.D.N.H.1991) (emphasis in original).

We do not have to reach the issue presented in *Rancourt* of whether the Bank would have an interest in the rents as cash collateral absent a showing that it had taken possession of the Properties in question prior to the bankruptcy filing. The rent constitutes cash collateral and the Bank holds a valid security interest in that cash collateral by virtue of the fact that the Bank did indeed enforce its interest in the rents pre-bankruptcy by obtaining orders appointing receivers to collect the rents for the two Properties.

Because clause 32 of the Mortgage grants the Bank a security interest in the rents, issues and profits flowing from the Properties as further consideration for the secured loan and also for the reason that clause 19 of the Mortgages grants the Bank an assignment of rents and the Bank had a receiver of rents appointed for the two Properties, it is this Court's conclusion

that the Bank holds a security interest in the same.

### 2. The Debtor's Right to Use the Cash Collateral

The Bank requests the additional relief that the Debtor be required to segregate the rents from the Properties and maintain them so segregated, render monthly reports thereof to the Bank, use such rentals only upon the further order of this Court, and requiring the Debtor to make periodic payments to the Bank as adequate protection during the pendency of this case.

As mentioned above, section 363(c)(2) provides that the Debtor may not use, sell or lease cash collateral that is property of the estate, unless the debtor obtains the consent of the impaired creditor, or the court, after notice and a hearing so authorizes such use, sale or lease. Furthermore, section 363(c)(4) requires the debtor to segregate and account for the cash collateral. However, section 552(b) states that although prepetition security interests may extend to the proceeds, product, offspring, rents, or profits acquired after the commencement of the case, the Court, after notice and a hearing, and based on the equities of the case may order otherwise. "The provision allows the court to consider the equities in each case. In the course of such consideration, the court may evaluate any expenditures by the estate relating to proceeds and any related improvement in position of the secured party." 124 Cong. Rec.H. 11,097–11,098 (daily ed. Sept. 28, 1978); s. 17,414 (daily ed. Oct. 6, 1978).

Although this Court does have the power to modify the Bank's security interest to the extent the Debtor is entitled to use cash collateral and limit its use of the same, as well as to determine what constitutes adequate protection for the Debtor's use of cash collateral, at this juncture the record is insufficient to allow the Court to make those determinations. In the interests of justice and judicial economy a hearing should be held to examine into the equities of this case which mitigate in favor of or against the modification of the Bank's lien on the cash collateral, the Debtor's need to use cash collateral, and the suffi-

ciency of any offer of adequate protection proposed by the Debtor.

 In any event, the Debtor is required by Section 363(c)(4) to segregate and account for the rentals. The Debtor should take prompt action to comply with that provision of the Bankruptcy Code, notwithstanding the fact that a hearing may be pending to determine the relative rights of the parties with respect to the use of cash collateral.

### 3. The Bank's Motion to Dismiss

The Bank moves to dismiss on several grounds including: (1) the Debtor's failure to appear at the first meeting of creditors; (2) the Debtor's failure to submit operating reports; (3) the Debtor's failure to make payments of principal or interest on either mortgage since December 13, 1990; and (4) the Debtor's unauthorized use of cash collateral.

 Although it is true that the Debtor did miss the first meeting of creditor's, it appears that infraction was due to a misunderstanding between the Debtor's attorney and the office of the U.S. Trustee. The first meeting was rescheduled at which time the Debtor and its attorney appeared and were examined. Therefore, the Debtor's failure to appear at the meeting of creditors should not, in and of itself constitute a reason to dismiss the case. Furthermore although the Debtor was delinquent in submitting operating reports, the Debtor has subsequently submitted those reports.

Considering that this Court feels a hearing is necessary in order to determine issues related to the Debtor's use of cash collateral and the Bank's entitlement to adequate protection, and in light of the statement in the Debtor's Affidavit in Opposition to the Motion to Dismiss that it stands ready to make all postpetition mortgage payments in a sum to be determined by this Court, it appears that it is premature to dismiss the Debtor's case.

### CONCLUSIONS

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and § 157(b)(2)(K) and (M).

2. The Rents, Issues and Profits from the Debtor's Properties constitute cash collateral in which the Bank has a security interest.

3. The Debtor is ordered to segregate and account to the Bank for the rents, issues and profits of the two Properties from the date of the filing of the petition in bankruptcy.

4. Counsel for the Debtor and the Bank are directed to arrange with my courtroom deputy for an evidentiary hearing on 10 days notice to the United States Trustee and the 20 largest creditors in order to resolve all remaining issues concerning the Debtor's rights if any to use cash collateral, and the sufficiency of any offer by the Debtor of adequate protection.

5. The Bank's motion to dismiss this case is denied without prejudice to renew at a later date.

6. SETTLE ORDER consistent with this opinion.