**In re MARINER ENTERPRISES OF PANAMA CITY, INC., Debtor.**

**Bankruptcy No. 89–04751.**

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Nov. 20, 1989.

John Daniel, Pensacola, Fla., for AmSouth Bank.

David Fleming, Gulf Breeze, Fla., for debtor.

## ORDER LIMITING USE OF CASH COLLATERAL

LEWIS M. KILLIGAN, Jr., Bankruptcy Judge.

This case is before the Court upon creditor AmSouth Bank of Florida's (AmSouth) emergency motion seeking to prohibit the Debtor from disposing of certain rents, in which AmSouth claims a security interest. The Court heard argument of counsel on October 3, 1989.

The facts are largely undisputed. The Debtor owns real property known as Mariner Plaza Shopping Center,[1] which is subject to a note and mortgage held by AmSouth. As additional security for the loan, the rents from the mortgaged property were also pledged to AmSouth by its then-owner, 231 Associates, a general partnership composed of Wallace C. Yost, Daniel A. Vertrees and Allen J. Miller. In 1988, the loan was in default. AmSouth filed a foreclosure action in state court against 231 Associates, Wallace C. Yost, Daniel A. Vertrees and Allen J. Miller, and demanded payment of the rent accruing from the shopping center. The parties stipulated to entry of an order by the state court requiring the rents accruing from the shopping center to be paid into the registry of the court. Rents accumulated from February 1, 1989, for the shopping center were deposited into the registry of the court.[2] In a coordinated move, the real property was conveyed by Mr. Yost, individually and as trustee, d/b/a 231 Associates, to his wholly-owned corporation, the Debtor, and the Debtor then filed its bankruptcy petition.

■ Two distinct classes of rental income are at issue—rents generated prior to Yost's transfer of the property to the Debtor and rents generated subsequent to Yost's transfer of the property. The rents generated prior to the transfer and sequestered in the registry of the state court could not be transferred by Mr. Yost. Once property is placed under the control of the court, by sequestration or by the appointment of a receiver, the court controls transfer of the property subject to the sequestration or receivership.[3] *See generally, Sunland Mortgage Corp. v. Louis,* 515 So.2d 1337, 1339 (5th DCA 1987). The Debtor asserts that those funds which were paid prior to the Debtor's acquiring any interest in the property now constitute property of this estate which should be dealt with by this Court. This contention, we find, is wholly without any merit. Any rents and profits generated by the property prior to its transfer were paid into the registry in accordance with Florida Statutes for the purpose of protecting the interest of AmSouth in those rents and profits and to keep 231 Associates or Mr. Yost from utilizing them or otherwise disposing of them. Mr. Yost could not transfer the rents subject to sequestration to the Debtor. Accordingly, the Debtor has no interest in rents generated prior to Yost's transfer of the real property, which are deposited in the state court registry or held by the receiver.

■ The Debtor argues that an assignment of rents creates only a lien against the rent proceeds, and that the right to use the rental income to maintain the rental property remains with the Debtor until confirmation of the foreclosure sale. The Debtor reasons that AmSouth's demand for payment of rents, therefore, entitles it only to sequestration of the rental income remaining after the reasonable and necessary operating expenses are paid, until a final order as to the rental income is entered. AmSouth argues its assignment, coupled with its demand for payment, caused the assignment to become absolute, such that

---

1. The Debtor owns and operates, in addition to the shopping center, a restaurant and liquor store known as Chan's/Mariner Liquors, which are located on the shopping center property. On or about September 18, 1989, shortly prior to the filing of the Debtor's bankruptcy petition, Wallace Yost, individually and as trustee, d/b/a 231 Associates, purported to convey title to the real property to the Debtor by quit claim deed.

2. Prior to the transfer of the property to the Debtor, it is believed the Debtor was a tenant of the shopping center.

3. Because the leasehold interest was transferred to the Debtor on the same day as bankruptcy petition was filed, there are no pre-bankruptcy rents belonging to this Debtor.

the Debtor no longer has any interest in the rental income.

■ Section 363(a) of the Bankruptcy Code defines cash collateral as cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest. Rents, to the extent they are subject to a lien, are cash collateral defined by the Code. *2 Collier on Bankruptcy,* Para. 363.02 at p. 363–12 (15th Ed.1988). Under Section 363(c)(2), an asset determined to be cash collateral may not be used, sold, or leased without either the consent of the creditor or an order of the Court.

■ The rights of a secured creditor are determined according to the applicable nonbankruptcy law of the state from which the debt arises. *Butner v. United States,* 440 U.S. 48, 55–57, 99 S.Ct. 914, 918–919, 59 L.Ed.2d 136 (1979). In Florida, a mortgage creates a lien against real property, but the right of possession and title remain with the owner. A mortgagee can acquire possession upon default only after a judicial foreclosure and sale. *See, Four Star Aviation, Inc. v. United States,* 409 F.2d 292 (5th Cir.1969); *Snow v. Nowlin,* 125 Fla. 166, 169 So. 598 (1936). An assignment of rents is additional security for the lender, and creates a lien against the rental income. The right to collect the rents remains with the debtor until judicial foreclosure and sale. *In re Aloma Square, Inc.,* 85 B.R. 623 (Bkrtcy.M.D.Fla.1988). Prior to the enactment of Section 697.07, Fla.Stats., under Florida common law, a lender was not entitled to the rents until it obtained an order of sequestration through the appointment of a receiver in a foreclosure proceeding or by taking possession of the property. *In re Johnny Parham,* 72 B.R. 604 (Bkrtcy.M.D.Fla.1987).

Florida's new statutory provision governing assignment of rents, Section 697.07, (Fla.Stat.1987), provides:

**Assignment of rents.**—A mortgage may provide for an assignment of rents. If such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee. Upon application by the mortgagee, a court of competent jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's right to the rents, any payments therefrom to be made solely to protect the mortgaged property and meet the mortgagor's lawful obligations in connection with the property. Any undisbursed portion of said rents shall be disbursed in accordance with the court's final judgment or decree.

This statute became effective October 1, 1987.

AmSouth's position is arguably supported by the decision in *In re Camelot Associates Ltd. Partnership,* 102 B.R. 161 (Bkrtcy.D.Minn.1989). Although AmSouth did not cite this case, the Minnesota bankruptcy court literally interpreted Florida Statute 697.07 in finding a mortgagee's right to receive rents "absolute and unconditional" once default occurs and demand is made.

This Court is uncomfortable with the failure of the Minnesota court to come to terms with the statute's literal requirement for a "final judgment or decree" to determine the allocation of rent. Better reasoned is the decision by the Bankruptcy Court for the Middle District of Florida, in *In re One Fourth Street North, Ltd.,* 103 B.R. 320 (Bkrtcy.M.D.Fla.1989), recognizing Section 697.07, Fla.Stats., "was not meant to create an outright or absolute transfer of ownership interest in rents where none existed before," it merely "change[s] the procedural manner in which an assignment of rents becomes effective." *In re One Fourth Street North, Ltd.,* supra, 103 B.R. at 321, citing to *In re Aloma Square, Inc.,* 85 B.R. 623 (Bkrtcy.M.D.Fla. 1988). With this construction, the statute provides an easier procedure to perfect a lender's right to the rents, but does not transfer title.

AmSouth's argument that an assignment of rents clause creates a self-perfecting lien which becomes "absolute upon default," Section 697.97, Fla.Stats., automati-

cally transferring title is without merit. Under AmSouth's interpretation, even if the mortgage was paid in full, the lender would still be entitled to receive the rental income. This strained construction contradicts the plain language of the statute, which defers a determination of "the mortgagee's right to the rents" until "the court's final judgment or decree." Section 697.07, Fla.Stats.

Prior to the petition in this case, AmSouth demanded payment of the rents in accordance with Section 697.07, Florida Statutes, and thereby perfected a security interest in rents obtained from the mortgaged property. By the plain language of the statute, AmSouth is entitled to sequestration of the rental income until a final judgment is entered. The right to use the rental income to maintain the rental property remains with the Debtor. *In re One Fourth Street North, Ltd., supra.* Accordingly, it is

ORDERED:

AmSouth's motion to prohibit use of cash collateral is granted in part. The Debtor is directed to collect post-petition rents, to pay only the necessary operating costs of the business, and to sequester the balance in a separate bank account. The funds sequestered shall not be utilized for any purpose without further order of this Court.

DONE AND ORDERED.