Hillsborough
No. 91-178

HUGH R. O'NEIL d/b/a HUGH R. O'NEIL REAL ESTATE

v.

RICHARD W. CARLSON & a.

April 16, 1992

*Thornton & Thornton P.A.*, of Manchester (*William G. Thornton* on the brief and orally), for the plaintiff.

*Wiggin & Nourie*, of Manchester, for the defendants, filed no brief.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Charlene F. Clinton* on the brief and orally), for the intervenor, Maine Savings Bank n/k/a Fleet Bank.

THAYER, J.   This interlocutory appeal from a ruling of the Superior Court (*Groff*, J.) concerns the plaintiff's and the intervenor's

claims to certain rental receipts formerly held by the defendants, Richard W. Carlson and Jack C. Correy, trustees of the R.G. Sullivan Associates Trust. The plaintiff is Hugh R. O'Neil d/b/a Hugh O'Neil Real Estate (O'Neil); the intervenor is Maine Savings Bank n/k/a Fleet Bank (the Bank). O'Neil, the appellant, argues that the superior court erred in releasing his *ex parte* attachment and allowing the Bank to take possession of the rent money. For the reasons stated below, we affirm and remand.

In 1985, the Bank, the defendants, and Manchester Housing Authority signed a "Mortgage, Security Agreement and Trust Indenture" (the mortgage), whereby Manchester Housing Authority agreed to lend the defendants money in order to rehabilitate a building in downtown Manchester. Under the terms of the mortgage, the defendants gave Manchester Housing Authority a security interest in their real property and assigned to it "[a]ll leases, tenancies or occupancy agreements now or hereafter affecting the Project, and all rents, income and profits due or to become due from any and all such leases, tenancies and occupancy agreements, whether or not in writing or recorded."

In addition, the Bank promised to secure the performance of Manchester Housing Authority's obligations to the defendants. Manchester Housing Authority, in turn, granted the Bank "a security interest under the Uniform Commercial Code" in all of Manchester Housing Authority's rights to the defendants' property "without limitation," and in "[t]he Financing Documents . . . together with all right, title and interest of the Issuer therein, including, but without limiting the generality of the foregoing, the present and continuing right to claim, collect and receive any of the moneys, income, revenues, issues, profits and other amounts payable or receivable thereunder . . . ." The mortgage was then recorded at the registry of deeds, and a financing statement filed with the Manchester city clerk.

Sometime afterward, O'Neil apparently contracted with the defendants to populate their building with tenants. O'Neil alleges that he did as he was asked, but never got paid for his services. In June 1990, one month before the defendants' building was sold at a foreclosure sale, O'Neil obtained an *ex parte* attachment on the rents generated from the building in order to secure his claim against the defendants for real estate commissions. The Bank contested the attachment, claiming a prior perfected security interest in the rents. O'Neil maintains he had no knowledge of the mortgage described above at the time the attachment was granted.

The superior court ruled that the Bank's interest in the rents is a security interest within article nine of New Hampshire's version of the Uniform Commercial Code and that this interest takes priority over O'Neil's attachment. On appeal, O'Neil first argues that the Bank's claim to the rents is not a perfected security interest within article nine of the commercial code. Second, he maintains that, even if it is a perfected security interest, the Bank's claim must yield to his attachment, because the attachment is akin to a mechanic's lien or a landlord's lien. Third, O'Neil contends that the terms of the mortgage implicitly require the Bank to pay him the real estate commissions.

We address O'Neil's arguments seriatim. First, we agree with the superior court that the Bank's interest in the rents is a perfected security interest within article nine of the commercial code. Although article nine does not apply "to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder," RSA 382–A:9–104(j) (Supp. 1991), it *is* applicable to security interests in documents and instruments, *see* RSA 382–A:9–102(1)(a) (Supp. 1991). Moreover, subsection 382–A:9–102(3) (Supp. 1991) states: "The application of this Article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Article does not apply."

The circumstances of this case fall squarely within 9–102(3), as clarified by its official comment.

> "An illustration of subsection (3) is as follows: The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. However, when the mortgagee in turn pledges this note and mortgage to secure his own obligation to X, this Article is applicable to the security interest thus created in the note and the mortgage."

RSA 382–A:9–102 cmt. 4. Here, Manchester Housing Authority holds the original, underlying assignment of rents from the defendants and is in the position of the neighbor-mortgagee in the example above; that is, outside the scope of article nine. The Bank, on the other hand, is in the position of X, because Manchester Housing Authority granted the Bank a security interest in the mortgage documents. The Bank's interest in the financing documents includes the right to collect rents. Although the mortgage "is itself secured by a

transaction or interest to which this Article does not apply," RSA 382–A:9–102(3) (Supp. 1991), the *security interest* in the mortgage is well within the ambit of the article. *Id.*

O'Neil cites several cases to support his contrary assertion. *See In re Standard Conveyor Co.*, 773 F.2d 198 (8th Cir. 1985); *In re Patterson*, 64 B.R. 189 (Bankr. N.D. Ill. 1986); *Citizens Bank and Trust Co., Pampa v. Wy-Tex Livestock Co.*, 611 S.W.2d 168 (Tex. Ct. App. 1981). None of these cases, however, involves the triangle of interests at work here, where C (the Bank) holds a *security interest* in an instrument between A (Manchester Housing Authority) and B (the defendants). Instead, each case concerns only the underlying transaction between A and B. The question we must answer is not whether article nine applies to the defendants' assignment of rents to Manchester Housing Authority, as evidenced by the mortgage documents, but whether it applies to the Bank's security interest in the instrument that is itself secured by the assignment of rents. One of the cases O'Neil cites, *Standard Conveyor*, even makes this distinction:

> "While the drafters of the U.C.C. made clear that a security interest in an instrument is covered by the U.C.C. even if that instrument is secured by a real estate mortgage, Barclays does not assert rights to the rent monies through any note or instrument. An Article 9 security interest in the underlying proceeds of a real estate lease—rents—is expressly precluded by U.C.C. 9–104(j)."

*Standard Conveyor*, 773 F.2d at 204 (footnote omitted). Thus, we agree with the superior court that article nine of the commercial code applies to this case.

■ Second, O'Neil argues that even if the Bank holds a perfected security interest in the rents through the mortgage, his attachment should be given priority. O'Neil relies upon RSA 382–A:9–310 (Supp. 1991), which provides:

> "When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods *in the possession* of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

(Emphasis added.) There are many reasons why this section of the commercial code does not apply here, the most obvious being that

O'Neil is not, and has not been, in possession of the rents he attached. Similarly, *General Motors Acceptance Corp. v. Colwell Diesel Service & Garage, Inc.*, 302 A.2d 595, 596–97 (Me. 1973), also cited by O'Neil, plainly declares that a mechanic's lien under Maine law does not operate to give priority to a mechanic unless he or she is *in possession* of the chattel.

More importantly, O'Neil has cited no authority, either from this jurisdiction or any other, to support his contention that a real estate broker's attachment of rents to secure a claim for commissions takes priority over an article nine perfected security interest. Our legislature has enacted a detailed scheme for the creation and operation of liens and attachments; O'Neil's proposition cannot find a foothold anywhere within it. *See* RSA chs. 447 to 454-B. To create a new category of priority liens would interfere with, and possibly upset, the framework erected by the legislature.

■ O'Neil also claims priority because the Bank's assignment of rents is collateral, not absolute, and conditional upon the defendant's default. For the Bank's assignment to assume priority over this attachment, he contends, the Bank would have to take over possession and management of the defendants' building under the mortgage's default provisions and actually collect rent. The Bank asserts that it has done these things; even if it has not, however, we would find little merit in O'Neil's argument. A bankruptcy court recently explained the relevant principles in the context of a bankruptcy action:

> "(1) The recording pre-bankruptcy by a mortgagee lender of the realty mortgage, and/or any separate document giving an assignment of leases and rentals pertaining to the real property mortgaged, does give the mortgagee an effective security interest in 'rents' as a type of collateral as opposed to a security interest in specific rent payments.
>
> (2) The recording of such documents gives the mortgagee rights superior to any subsequent third party who would seek to take a security interest in the leases and rentals pertaining thereto as a type of collateral.
>
> (3) With regard to the mortgagor or any third party who deals with specific rental payments in hand before the mortgagee acts to take over possession and management of the premises, the mortgagee's security interest in rents, being contingent upon default, and assertion by possession, is not superior to the mortgagor or any third party in that context.

. . . .

(5) The fact that the mortgagee can't enforce his security interest in specific rents prior to taking over possession and management of the rental premises does not destroy the legal existence of an effective security interest in rents as a type of collateral held by the mortgagee at the time of the recording of the pertinent documents."

*In re Rancourt*, 123 B.R. 143, 147–48 (Bkrtcy. D.N.H. 1991). We find the above analysis persuasive and applicable to the case before us. As O'Neil does not allege that he has dealt with any specific rental payments in hand, paragraph (3) above does not except him from the general rule that gives priority to a recorded assignment of rents over a subsequent interest, regardless of the assignment's conditional or collateral nature.

■ We note that our decision does not deprive O'Neil of a cause of action against the defendants for the real estate commissions. Instead, we merely hold that he cannot secure payment of this debt by attaching the defendants' rents, because the Bank has a prior perfected security interest. *See* RSA 382–A:9–312(5)(a) (Supp. 1991) (assuming no other rules apply, earlier perfected security interest takes priority). Whether the remedy O'Neil seeks *should* be made available to him, and to others like him, is for the legislature to decide.

■ Third, O'Neil claims that the mortgage signed by the defendants, the Bank, and Manchester Housing Authority implicitly obligates the Bank to pay him the real estate commissions. This argument, however, is irrelevant to the issue before us, whether O'Neil should be granted a priority attachment in the rents generated from the defendants' building. The question whether a particular party must pay a creditor's claim is decided without regard to any dispute among creditors as to which of their security interests takes priority under article nine of the commercial code.

For these reasons, we cannot accept O'Neil's arguments, and we affirm the superior court's ruling.

*Affirmed and remanded.*

HORTON, J., did not sit; the others concurred.