**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**No. 98-60442**

---

In the Matter of:  THOMAS SHANNON MILLETTE, Debtor.

---

O'NEAL STEEL, INCORPORATED,

Appellant-Cross-Appellee,

v.

E B INCORPORATED,

Appellee-Cross-Appellant.

---

**Appeals from the United States District Court
for the Southern District of Mississippi**

---

August 24, 1999

Before JONES and STEWART, Circuit Judges, and DUPLANTIER,[*] District Judge.

EDITH H. JONES, Circuit Judge:

At issue in this case is whether, under Mississippi law, an "assignment of rents" clause contained in a properly recorded deed of trust gives the mortgagee a perfected secured interest in the rents.[1]  Although this issue has never been addressed by the courts of Mississippi, our best <u>Erie</u> guess is that, following the majority rule, a Mississippi mortgagee's interest in the rents

---

[*]     District Judge of the Eastern District of Louisiana, sitting by designation.

[1]     Since rents generated from real property are considered realty, assignments of rents are governed by real property law rather than Article 9 of the Mississippi Uniform Commercial Code.  <u>See</u> Miss. Code Ann. § 75-9-104(j) (Supp. 1998) (stating that the Mississippi Commercial Code excludes "the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder").  Although the term "perfection" is not typically used to describe a security interest in realty, we use it here out of convenience to convey the same meaning as that used in Article 9.

becomes perfected when it properly records the document granting the assignment. The judgment of the bankruptcy and district courts is affirmed.

**BACKGROUND**

Thomas Millette, Ted Millette, William Millette, and Charles Fridge own a commercial building in Pascagoula, Mississippi known as the "Market Street Building." In August 1992, the owners executed a promissory note in favor of Eastover Bank in the principal amount of $ 445,198.71. As security for the note, the owners executed a deed of trust in favor of Eastover that contained the following assignment of rents clause:

> As additional security, Debtor hereby assigns to Secured Party all rents accruing on the Property. Debtor shall have the right to collect and retain the rents as long as Debtor is not in default as provided in Paragraph 9. In the event of default, Secured Party in person, by an agent or by a judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and collect the rents. All rents so collected shall be applied first to the costs of managing the Property and collecting the rents, including fees for a receiver and an attorney, commissions to rental agents, repairs and other necessary related expenses and then to payment of the indebtedness.

The parties stipulated that the deed of trust securing the Market Street Building was properly recorded in the Jackson County property records. MTGLQ Investment, L.P. subsequently purchased the note and deed of trust from Eastover and retained Security National to service the loan.[2]

In November 1993, O'Neal Steel obtained an Alabama judgment against Thomas, William, and Ted Millette in the amount of

---

[2] For the sake of convenience, this opinion refers to Security National as the secured party competing with O'Neal for priority over the rents.

$ 164,335.89 plus interest. O'Neal enrolled the judgment in Jackson County, Mississippi on January 10, 1994. In May 1994, the Millettes, doing business as "Millette & Associates," entered into a commercial lease with Jackson County, which became the sole tenant in the Market Street Building. After discovering that the Millettes owned the building and were receiving rental income from it, O'Neal instituted a garnishment action in the Mississippi Circuit Court and served a writ of garnishment on Jackson County. As required by Mississippi law, the County answered the writ of garnishment, admitting it owed a debt to "Millette & Associates" under the lease. The County further stated that Security National claimed a prior interest in the rents pursuant to the recorded assignment of rents clause contained in the deed of trust.

When Security National learned of the garnishment action on January 4, 1995, it immediately served written notice and demand on Jackson County and ultimately intervened as a party in the garnishment action.[3] Months later, Security National instituted foreclosure proceedings, but before it could complete the foreclosure, Thomas Millette filed for Chapter 7 bankruptcy,[4] staying the foreclosure and all activity in the state court garnishment proceeding. The present adversary proceeding was

---

[3] Due to the dispute between O'Neal and Security National, Jackson County paid its rent into the court's registry. The rents from the building, which totaled $ 173,739.24 as of January 1997, are now being held by the trustee in bankruptcy in an interest bearing account.

[4] Thomas Millette filed for bankruptcy on July 6, 1995. On October 4, 1995, William Millette and his wife also filed for Chapter 7 bankruptcy protection. Ted Millette, one of the other owners and judgment debtors of O'Neal, did not file for bankruptcy protection.

commenced in bankruptcy court to determine the extent and priority of the competing liens on the rents.

O'Neal argues here, as it did in the bankruptcy and district courts, that it had a perfected interest in the Market Street Building's rents from the date it served its writ of garnishment on Jackson County. O'Neal contends that its lien has priority over Security National's lien because Security National failed to take the necessary steps to perfect its interest. According to O'Neal, under Mississippi law, a mortgagee must not only record its assignment of rents, it must also take "additional action," like appointing a receiver, to perfect its interest in rents. Therefore, because O'Neal served its writ of garnishment before Security National took the requisite additional action, O'Neal's interest in the rents should be superior.

The bankruptcy court disagreed with O'Neal's construction of Mississippi law and granted summary judgment in favor of Security National, holding that, based upon a then-recent Mississippi Supreme court decision, Security National had a perfected interest in the rents when it recorded its deed of trust containing the assignment of rents clause.[5] Although the district court disagreed with the bankruptcy court's legal analysis, it

---

[5] The bankruptcy court (and the district court) also concluded that, because O'Neal did not strictly comply with Mississippi garnishment procedures by properly objecting to Jackson County's answer, O'Neal failed to perfect its interest in the rents. Because we hold that Security National had a perfected security interest in the rents that primes O'Neal in any event, it is unnecessary to decide the garnishment procedure issue. And the interpretation of 11 U.S.C. § 552(b) is also irrelevant.

4

reached the same result. It held that an assignment of rents clause is not perfected upon recordation; instead, a mortgagee must take "additional steps" to perfect its interest. According to the district court, Security National's actions upon learning of the garnishment were sufficient to perfect its previously recorded assignment of rents.

## STANDARD OF REVIEW

This court reviews the district court's legal conclusions on a grant of summary judgment de novo, and it views the facts in the light most favorable to the non-moving party. Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Horton v. City of Houston, 179 F.3d 188 (5th Cir. 1999).

## DISCUSSION

Whether a Mississippi mortgagee, which has obtained an assignment of rents, is perfected in the rents when the assignment is recorded, or whether it must take additional steps to perfect its interest in the rents, is an issue of first impression both in this court and the courts of Mississippi. This court must anticipate what the Mississippi Supreme court would decide if the issue were before it. See Free v. Abbott Labs., 176 F.3d 298, 299 (5th Cir. 1999); F.D.I.C. v. Abraham, 137 F.3d 264, 268 (5th Cir. 1998). With little to go on, our best judgment is that the

5

Mississippi Supreme Court would follow the modern trend of the law and hold that a mortgagee obtains a perfected lien on rents when it properly records an assignment of rents in the property records.

O'Neal, on the other hand, advocates the older common law approach, which a minority of states continue to follow.[6] Under the older rule, an assignment of rents gives the mortgagee an inchoate lien which is perfected only when the mortgagee takes additional action to enforce it. In Texas, for instance, "an assignment of rentals does not become operative until the mortgagee obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, or takes some other similar action." Taylor v. Brennan, 621 S.W.2d 592, 594 (Tex. 1981).

The majority of courts and legislatures have abandoned the "additional action" rule in favor of a rule analogous to those governing perfection of secured interest in personal property under

---

[6] See, e.g., Bevins v. Peoples Bank & Trust Co., 671 P.2d 875, 879 (Alaska 1983) ("The beneficiary must take some action to acquire possession of the property or the rents before the rent clause becomes operative."); Martinez v. Continental Enter., 730 P.2d 308, 316 (Colo. 1986) (en banc) ("[U]ntil the mortgagee takes some effectual step to subject the rents to the payment of the debt, . . . the mortgagee has but an inchoate right to the rents.").
Several federal courts, while interpreting state law, have also followed the old rule. See, e.g., In re Century Inv. Fund VIII L.P., 937 F.2d 371, 377 (7th Cir. 1991) (Wisconsin); In re 1301 Conn. Ave. Assocs., 126 B.R. 1, 3 (D.D.C. 1991) (District of Columbia); First Federal Savings and Loan Assoc. of Toledo v. Hunter (In re Sam A. Tisci, Inc.), 133 B.R. 857, 859 (N.D. Ohio 1991) (Ohio); Condor One, Inc. v. Turtle Creek, Ltd. (In re Turtle Creek, Ltd.), 194 B.R. 267, 278 (Bankr. N.D. Ala. 1996) (Alabama); In re Mews Assocs., L.P., 144 B.R. 867, 868-69 (Bankr. W.D. Mo. 1992) (Missouri); Drummond v. Farm Credit Bank of Spokane (In re Kurth Ranch), 110 B.R. 501, 506 (Bankr. D. Mont. 1990) (Montana); Armstrong v. United States (In re Neideffer), 96 B.R. 241, 243 (Bankr. D.N.D. 1988) (North Dakota); Ziegler v. First Nat'l Bank of Volga (In re Ziegler), 65 B.R. 285, 287 (Bankr. D.S.D. 1986) (South Dakota).

the Uniform Commercial Code.[7]  Under the modern approach, the recording of a mortgage document containing an assignment of rents "gives the mortgagee rights superior to any subsequent third party who would seek to take a security interest in the leases and rentals pertaining thereto as a type of collateral."  O'Neill v. Carlson, 608 A.2d 858, 861 (N.H. 1992) (quoting In re Rancourt, 123 B.R. 143, 147 (Bankr. D.N.H. 1991) (quotations omitted)).  Several state legislatures have also rejected the old common law rule.[8]  In Florida, for example, an assignment of rents is "perfected and

---

[7]     See, e.g., Travelers Ins. Co. v. First Nat'l Bank of Blue Island, 621 N.E.2d 214-15 (Ill. App. Ct. 1993) (holding that, in Illinois, the mortgagee perfects "a first priority security interest" in rents by recording the loan documents); Teachers Ins. and Annuity Ass'n of Am. v. Oklahoma Tower Assocs. L.P., 798 P.2d 618, 622 (Okla. 1990) ("[T]he [Oklahoma] Legislature expressed its intent that mortgagees should be entitled to rents under valid rent assignments prior to foreclosure or the appointment of a receiver.").
Several federal courts have also opted for the modern approach while interpreting state law.  See, e.g., Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34, 39 (3d Cir. 1993) (Pennsylvania); Scottsdale Med. Pavilion v. Mutual Benefit Life Ins. Co. (In re Scottsdale Med. Pavilion), 52 F.3d 244 (9th Cir. 1995), adopting as its own opinion, 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993) (Arizona); In re Sansone, 126 B.R. 16, 19 (Bankr. D. Conn. 1991) (Connecticut); In re May, 169 B.R. 462, 467 (Bankr. S.D. Ga. 1994) (Georgia); Federal Land Bank v. Terpstra (In re Porter), 90 B.R. 399, 404 (N.D. Iowa 1988) (Iowa); First Nat'l Bank of Bar Harbor v. United States Dep't of Agric. (In re Dorsey), 155 B.R. 263, 268 (Bankr. D. Me. 1993) (Maine); In re Coventry Commons Assocs., 143 B.R. 837, 838 (E.D. Mich. 1992) (Michigan); New York Life Ins. Co. v. Bremer Towers, 714 F. Supp. 414, 418 (D. Minn. 1989) (Minnesota); Midlantic Nat'l Bank v. Sourlis, 141 B.R. 826, 834 (D.N.J. 1992) (New Jersey); 641 Avenue of the Am., L.P. v. 641 Assocs., Ltd., 189 B.R. 583, 590 (S.D.N.Y. 1995) (New York); In re KNM Roswell L.P., 126 B.R. 548, 554 (Bankr. N.D. Ill. 1991) (New Mexico); SLC Ltd. V v. Bradford Group West, Inc. (In re SLC Ltd. V), 152 B.R. 755, 761 (Bankr. D. Utah 1993) (Utah).

[8]     See, e.g., Cal. Civ. Code § 2938(a) (West 1993) (California); Del. Code Ann. tit. 25, § 2121(a) (Supp. 1998) (Delaware); Kan. Stat. Ann. § 58-2343(b) (1994) (Kansas); Md. Code Ann., Real Prop. § 3-204 (1996) (Maryland); Neb. Rev. Stat. § 52-1704 (1998) (Nebraska); N.C. Gen. Stat. § 47-20(c) (Supp. 1998) (North Carolina); Tenn. Code Ann. § 66-26-116(a) (1993) (Tennessee); Va. Code Ann. § 55-220.1 (Michie 1995) (Virginia); Wash. Rev. Code Ann. § 7.28.230(3) (West 1992) (Washington).

effective against third parties upon recordation of the mortgage . . . in the public records of the county in which the real property is located . . . ." Fla. Stat. Ann. § 697.07(2) (West Supp. 1999).

The recently published ALI Restatement of Mortgages has also adopted the position that a mortgage on rents is perfected when recorded. See Restatement (Second) of Property - Mortgages § 4.2(b) (1997). Under the Restatement, a mortgage on rents "is effective as against the mortgagor and, subject to the operation of the recording act, as against third parties, upon execution and delivery." Id. The Restatement's comments make it clear that, upon recordation, the mortgagee will be protected against competing claims by third parties and others claiming priority over the rents. See id. at § 4.2 cmt. b.

Public policy considerations weigh in favor of rejecting the old rule. The modern rule best protects diligent mortgagees from competing liens filed by subsequent creditors. Under the prior approach, a mortgagee with a lien on rents or an assignment of rents clause will nearly always lose a priority battle with a judgment creditor when the debtor has not defaulted on its payments under a mortgage. A judgment creditor can perfect its interest at any time by properly serving a writ of garnishment, while a mortgagee is prohibited from taking the requisite "additional action" to perfect until the debtor has defaulted. This leads to a bizarre result: A mortgagee, which has done all it could to secure its interest in the rents, loses priority to a judgment

8

creditor who had constructive knowledge by the recordation of the mortgagee's assignment of rents. The case at hand illustrates this result. Security National was unaware of O'Neal's judgment against the Millettes until after the writ of garnishment had already been served. Once Security National learned of the garnishment, it immediately served notice of its interest and intervened in the garnishment action. Before O'Neal served the writ of garnishment, the Millettes were not in default on the lease, and Security National had no justification for "further action" to perfect its assignment of rents. In spite of Security National's post-garnishment diligence, its interest would be subordinate to O'Neal's under the old common law rule.

Recognizing the inequity resulting from the application of the old rule, courts that continue to apply it have occasionally escaped its harsh result by liberally finding "additional action" of a mortgagee that sufficiently satisfied the rule. See, e.g., In re Keller, 150 B.R. 835, 839 (Bankr. N.D. Ga. 1993) (holding that a mortgagee perfected its right to rents upon filing of a motion for relief from the automatic stay); In re Mariner Enterprises of Panama City, Inc., 131 B.R. 190, 193 (Bankr. N.D. Fla. 1989) (holding that a mortgagee's demand that the borrower turn over the rents is sufficient); In re McCann, 140 B.R. 926, 928-29 (Bankr. D. Mass. 1992) (holding that filing a state foreclosure action is sufficient). The district court's opinion in this case typifies the approach. The court held that, although Security National was not perfected at the time O'Neal served its writ of garnishment, it

9

soon became perfected by taking immediate steps to protect its interest in the rents.

Courts also avoid the old rule when it appears that, instead of receiving an inchoate lien on rents, the mortgagee received an "absolute assignment" of the rents. An absolute assignment passes title to the rents instead of granting a security interest and "operates to transfer the right to rentals automatically upon the happening of a specified condition, such as default." Taylor, 621 S.W.2d at 594. To be absolute, however, there must be "especially clear evidence that the parties intended to create such an assignment." F.D.I.C. v. International Prop. Management, Inc., 929 F.2d 1033, 1036 (5th Cir. 1991); see also In re Century Investment Fund VIII L.P., 937 F.2d 371, 377 (7th Cir. 1991) (Wisconsin law). Words such as "security" or "pledge" in the loan documents are insufficient to effect an absolute assignment. FDIC, Id.

Because the perfection-upon-recordation rule for a mortgagee's security interests in rents is consistent with modern secured transaction law and unencumbered by the complexities, distinctions and harsh results of the common law, we conclude that the Mississippi Supreme Court would reject the old rule and reward a diligent creditor, which records its assignment of rents and protects its lien by giving constructive notice to hypothetical third-parties. See Mills v. Damson Oil Corp., 720 F.2d 874, 875 (5th Cir. 1983) (recognizing that a recorded deed in Mississippi, even if defective, gives constructive notice of the deed's

10

contents); <u>McMahon v. McMahon</u>, 157 So.2d 494, 500-01 (Miss. 1963) (same).

There is no contrary Mississippi authority. The bankruptcy court in this case relied heavily on a Mississippi Supreme Court decision that interpreted a notice provision of a mortgagee's security agreement in light of the competing claim of a garnishee. <u>Merchant and Farmers Bank of Koscuisko, Miss. v. State ex rel. Moore</u>, 651 So.2d 1060 (Miss. 1995). But, like the district court, we fail to see the relevance of that case to the specific issue before us. Two Mississippi bankruptcy courts have addressed perfection of an assignment of rents clause under Mississippi law and followed the old rule. <u>See</u> <u>In re Crossroads Market, Inc.</u>, 190 B.R. 269, 271 (Bankr. N.D. Miss. 1994); <u>Delta Plaza Partners v. Minnesota Mut. Life Ins. Co. (In re Delta Plaza Partners)</u>, 133 B.R. 355, 357-58 (Bankr. N.D. Miss. 1991). Both <u>Crossroads Market</u> and <u>Delta Plaza</u>, however, relied on Fifth Circuit cases interpreting Texas law that do not control a case governed by Mississippi law.[9] Moreover, the only independent justification noted for the bankruptcy court's holding that Mississippi would adopt the old common law rule is that Mississippi, like Texas, is a "lien theory" state. <u>See</u> <u>Delta Plaza</u>, 133 B.R. at 358, <u>citing</u> <u>Myers v. Hobbs</u>, 100 F.2d 822 (5th Cir. 1939). That premise appears

---

[9]Each time this court has addressed perfection of an assignment of rents, it has been interpreting Texas law. <u>See</u> <u>International Prop.</u>, 929 F.2d at 1034; <u>Casbeer v. State Fed. Sav. & Loan Ass'n of Lubbock (In re Casbeer)</u>, 793 F.2d 1436, 1442 (5th Cir. 1986); <u>Wolters Village, Ltd. v. Village Prop., Ltd. (In re Village Prop. Ltd.)</u>, 723 F.2d 441, 443 (5th Cir. 1984).

11

to have been rejected by the <u>en banc</u> Mississippi Court of Appeals in a recent decision concluding that Mississippi is an "intermediate theory" state.[10]  <u>See</u> <u>Anderson v. Kimbrough</u>, No. 97-CA-01169, 1999 WL 435649, at *6 (Miss. Ct. App. June 29, 1999) (en banc) (slip opinion); Miss. Code Ann. § 89-1-43 (Rev. 1991). Application of the modern rule is particularly appropriate in an intermediate theory state.

## CONCLUSION

Security National's interest in the rents was perfected when it recorded its deed of trust containing the assignment of rents clause.  Accordingly, that interest primes the later garnishment lien asserted by O'Neal against the rents.

The judgments of the district and bankruptcy courts are, for the foregoing reasons, AFFIRMED.

---

[10]In "title theory" states, the mortgagee holds title to the land from the outset of the loan until the debt has been satisfied.  In "lien theory" states, the borrower holds title to the land and the mortgagee has a lien on the property.  Finally, in "intermediate theory" states, the borrower maintains title to the property; however, once the loan goes into default, the mortgagee immediately receive title and the right to possess the property.  <u>See</u> <u>Anderson</u>, 1999 WL 435649 at *6.