**641 AVENUE OF the AMERICAS LIMITED PARTNERSHIP, Plaintiff,**

**v.**

**641 ASSOCIATES, LTD. and Mitchell W. Miller, as Chapter 7 Trustee for 641 Associates, Ltd., Defendants.**

**No. 94 Civ. 1259 (DC).**

United States District Court, S.D. New York.

Dec. 1, 1995.

Denying Extension of Exclusivity Period.

Battle & Fowler L.L.P. by James Lawless, IV, New York City, for Plaintiff.

DiDonato & Winterhalter, P.C. by Paul J. Winterhalter, Philadelphia, Pennsylvania, for Defendant Mitchell W. Miller.

### *MEMORANDUM DECISION*

CHIN, District Judge.

In this diversity action, plaintiff 641 Avenue of the Americas Limited Partnership ("plaintiff") seeks a declaration that it has a perfected security interest in rents that were originally paid to defendant 641 Associates, Ltd. ("Associates") and that are now held in escrow by the Chapter 7 Trustee for 641 Associates, Ltd., Mitchell W. Miller (the "Trustee"). Plaintiff also seeks a declaration that the Trustee must transfer those proceeds, which are currently held in escrow, to plaintiff. Plaintiff moves for summary judgment claiming that it is entitled to the funds in question as a matter of law. The Trustee has cross-moved for summary judgment, arguing that principles of *res judicata* and collateral estoppel bar plaintiff's claim. Alternatively, the Trustee argues that because Associates commenced bankruptcy proceedings before plaintiff's predecessor in interest obtained an enforceable interest in the disputed funds, these funds belong to the bankruptcy estate. For the reasons set forth

below, plaintiff's motion is granted and the Trustee's motion is denied.

## BACKGROUND

### A. The Loan and Controlling Loan Documents

The parties agree that the facts pertaining to these cross-motions for summary judgment are undisputed. In December 1986, plaintiff's predecessor in interest, Balcor Real Estate Finance, Inc. ("Balcor"), made a $15,000,000 loan (the "Loan") to Associates' predecessor, CoreGroup 641 Associates, Ltd. (collectively "Associates") in connection with Associates' purchase of real property and improvements located at 641 Avenue of the Americas in Manhattan (the "Property"). To evidence the Loan, Balcor and Associates executed a Consolidation, Modification and Restatement of Secured Promissory Notes dated December 11, 1986, which was thereafter modified on December 15, 1986, December 2, 1988, and August 14, 1990 (as modified, the "Note"), evidencing a total indebtedness of $15,000,000.

The Note provided that Associates would make interest payments on the first day of each month and would pay the entire principal balance of the loan on January 1, 1992. Associates' failure to make a required payment would constitute an "Event of Default" if such payment was not received within five days of its due date. Upon an Event of Default, Balcor would be entitled to exercise its remedies under the Note and other loan documents.

As security for the Loan, the parties executed a mortgage on the Property (the "Mortgage") and an Assignment of Leases and Rents with respect to the Property (the "Assignment of Rents"). Both the Mortgage and the Assignment of Rents were recorded in the Office of the New York City Register in New York County on January 23, 1987. The Mortgage granted a lien and a security interest to Balcor in, *inter alia*, rents, issues, avails, profits and proceeds under present and future leases (the "Rents"). Similarly, as additional security for the Loan, the Assignment of Rents assigned to Balcor, *inter alia*, all of Associates' right, title, and interest in the Rents, including Associates' right

to collect and receive the Rents directly. Balcor would not collect the Rents, however, until an Event of Default, for the Assignment of Rents granted Associates a limited license to collect the Rents until such an event.

### B. Associates' Bankruptcy and the Rents Stipulation

On March 1, 1991, Associates failed to make the interest payment that was due under the Note. Pursuant to the terms of the Note, the Mortgage, and the Assignment of Rents, Balcor could not exercise its remedies with respect to this nonpayment unless no payment was received for five days, thereby triggering an Event of Default. On March 4, 1991, before an Event of Default occurred, Associates filed for bankruptcy in the Eastern District of Pennsylvania (the "Bankruptcy Court"). As a result, the automatic stay imposed under § 362 of the Bankruptcy Code precluded Balcor from exercising its remedies for Associates' nonpayment, which would have become an Event of Default on March 6, 1991 under the express terms of the loan documents.

In August 1991, Balcor moved in the Bankruptcy Court, *inter alia*, to sequester the Rents during the pendency of the bankruptcy action. As a result, on November 1, 1991, the parties entered into a stipulation (the "Rents Stipulation") providing that Associates would continue to operate the Property and all Rents in excess of reasonable operating expenses would be deposited into a separate reserve account (the "Shearson Reserve Account"). No disbursements could be made from this account without either Balcor's consent or an order from the Bankruptcy Court. The Rents Stipulation also provided that

> To the extent that the court determines that Balcor has a duly perfected lien on the Rents, Balcor shall have a continuing lien of the same priority as its existing lien on the monies held in the Reserve Account created pursuant to this Stipulation and Order and on all Rents, earnings, income and profits from the Property.

Finally, the Rents Stipulation provided that its provisions would be "binding and effective upon the parties hereto and all successor

parties in interest including any trustee that may be appointed...."

Over the next two years, Associates attempted, unsuccessfully, to develop a plan of reorganization that the Bankruptcy Court would confirm. As a result of Associates' inability to develop an acceptable plan, the Bankruptcy Court converted the Chapter 11 proceeding to a Chapter 7 proceeding and thus appointed the Trustee. In October 1993, the Trustee obtained an order from the Bankruptcy Court directing that the funds in the Shearson Reserve Account be turned over to the Trustee. The Trustee then established his own account for maintenance of the funds (the "Chemical Reserve Account").

On December 17, 1993, plaintiff obtained Balcor's interest in the Loan. As of June 1, 1995, $11,605,638.27 remained outstanding under the loan, exclusive of any additional costs or expenses. Interest continues to accrue at a rate of $1,551.80 per day. Currently, the Chemical Reserve Account contains over $1 million. At least a portion, if not all, of these funds were acquired after institution of the bankruptcy proceedings.

## C. *Procedural History*

During the pendency of this litigation, the Bankruptcy Court issued several opinions and orders on a variety of issues. Four of these rulings have particular significance to the issues presently before me. On May 13, 1992, the Bankruptcy Court denied Associates' First Amended Plan of Reorganization. As part of this proposed plan, Associates would have distributed the Rents to creditors other than Balcor. Balcor objected, claiming that it had a security interest in those proceeds. Although the court stated that "Balcor has not proven that it had a security interest in the rents collected by the Debtor," the proposed plan was not confirmed. *In re 641 Assocs., Ltd.,* 140 B.R. 619, 628 (Bankr. E.D.Pa.1992) ("Opinion I"). Thus, no final order was ever entered on the issue of whether Balcor had a security interest in the Rents.

In two subsequent adversarial proceedings brought before the same bankruptcy judge, Associates and the Trustee each moved to dismiss Balcor's claim to the Rents, arguing

that *res judicata* barred any claim to those proceeds. In orders dated July 14, 1993 and November 18, 1993, the Bankruptcy Court rejected those arguments.

Finally, the Trustee moved for clarification of a November 30, 1993 order issued by the Bankruptcy Court, which had clarified its March 12, 1993 order "to indicate that Balcor Real Estate Finance, Inc. was granted relief to determine its rights to the Reserve Account containing rents to the Debtor's property...." By order dated December 2, 1994, the court denied the Trustee's motion, stating as follows:

> This Court's Order of November 30, 1993, *was* clearly meant to express a belief that litigation should be brought by Balcor Real Estate Finance, Inc., or its assignee in the State of New York as it had relief from the automatic stay to do so and this Court believed that it was inappropriate for this court to decide this issue. That Order was not appealed from and it appears improper to ask us to change it. We are someone [sic] disappointed to note that this issue remains undecided one year later, and therefore may reconsider this Order if the New York Courts are unwilling or incapable of deciding this matter promptly, although we are not prepared to reach that conclusion at this time.

Order dated December 2, 1994.

## *DISCUSSION*

■ Summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but [to] determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Here, there is no dispute as to the material facts. As such, summary judgment is appropriate.

To determine whether plaintiff is entitled to the funds contained in the Chemical Reserve Account, I must decide three issues of law: (1) whether the principles of *res judicata,* collateral estoppel, or law of the case prevent plaintiff from litigating its right to the Rents; (2) whether the Rents contained in the Chemical Reserve Account constitute plaintiff's "cash collateral"; and (3) whether plaintiff has an enforceable interest in the Rents, thereby entitling it to recover these funds.

## A. *Res Judicata, Collateral Estoppel, and Law of the Case*

The doctrines of *res judicata* and collateral estoppel apply with full force to proceedings in bankruptcy court. *Katchen v. Landy,* 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966); *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 375, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940). Under the doctrine of *res judicata,* a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); *see also Prime Management Co. v. Steinegger,* 904 F.2d 811, 815 (2d Cir.1990) (*res judicata* "prevents the litigation of any claim or ground of recovery that was available to a party in a prior action, whether or not the prior judgment actually determined that claim or ground."). A prerequisite to giving a prior judgment preclusive effect is that the prior judgment must constitute a final judgment "on the merits." *Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867–68, 99 L.Ed. 1122 (1955); *Sure–Snap Corp. v. State Street Bank and Trust Co.,* 948 F.2d 869, 872 (2d Cir.1991).

Under the doctrine of collateral estoppel, a party is barred from relitigating an issue if "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on

the merits." *In re PCH Assocs.,* 949 F.2d 585, 593 (2d Cir.1991); *see also* 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4416, at 137–38.

Finally, under the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation. *In re PCH Assocs.,* 949 F.2d at 592. Nevertheless, the doctrine is discretionary and does not constitute a limitation on a court's power. *Conrad v. Beck–Turek, Ltd.,* 891 F.Supp. 962, 967 (S.D.N.Y.1995). Rather, unlike the doctrine of *res judicata,* the law of the case doctrine authorizes departure from a prior ruling in the event of an intervening change in the controlling law. *N.L.R.B. v. Coca–Cola Bottling Co. of Buffalo, Inc.,* 55 F.3d 74, 77 (2d Cir.1995) (citations omitted).

In this action, the Bankruptcy Court issued Opinion I, which addressed plaintiff's entitlement to the Rents currently held in escrow by the Trustee. In Opinion I, the court found that Balcor failed to prove that it had a security interest in the Rents. *In re 641 Assocs.,* 140 B.R. at 628. Applying New York law, the court found that Balcor's inability to prove a pre-petition default, or even to prove that it provided a pre-petition notice of default, was fatal to its claim. *Id.* Furthermore, the court rejected Balcor's argument that "its postpetition filing of a Notice of Perfection of its security interest in the [Associates'] rents, by strength of 11 U.S.C. § 546(b), effects a perfection of its alleged security interest in the [Associates'] rents." *Id.* Thus, the court concluded that Associates could use the Rents to fund the claims of creditors other than Balcor.

Although a cursory review of Opinion I would seem to indicate that the Bankruptcy Court finally determined the parties' rights to the Rents, a closer look at both the issue before the court when it issued Opinion I and subsequent orders issued by the same judge reveals that Opinion I does not bar the present action. First, the court never issued a final order on the merits pertaining to this issue. The court's order simply denied confirmation of Associates' First Amended Plan

of Reorganization, dismissed an adversary proceeding against Balcor, and conditionally denied Balcor's motion seeking relief from the automatic stay, provided that Associates submitted a confirmable reorganization plan. Neither this order nor any order issued by the Bankruptcy Court addressed the parties' rights to the Rents. Finally, the same judge who issued Opinion I rejected a claim that *res judicata* barred litigation of the Rents issue on two separate occasions. *See* Order dated July 14, 1993 and Order dated November 18, 1993. Thus, *res judicata* does not apply.

■ Second, the issue of the parties' respective rights to the Rents was not squarely before the Bankruptcy Court. The Bankruptcy Court merely addressed the issue in reference to Associates' plan of reorganization. As the Bankruptcy Court made clear in its December 2, 1994 order, the court specifically intended that plaintiff raise the Rents issue in a New York forum. Thus, the bankruptcy judge plainly did not believe that the issue was actually litigated when issuing Opinion I. Similarly, the discussion concerning the security interest in the Rents was not necessary to support a valid and final judgment on the merits. The court rejected Associates' reorganization plan for reasons wholly separate from the issue of the Rents. Thus, the court's discussion of the Rents issue was not necessary to its decision. Thus, collateral estoppel does not apply.

■ Third, as is evidenced by the Bankruptcy Court's subsequent orders dated July 14, 1993, November 18, 1993, and December 2, 1994, the court did not issue a final decision on this issue of law; it deferred this issue to be heard by a New York court. Thus, the law of the case doctrine does not bar my review of this issue. Accordingly, for all of these reasons, I reject the Trustee's contention that this action is barred by the doctrines of *res judicata*, collateral estoppel, or law of the case.

**B. *The Rents Constitute Cash Collateral***

■ I now turn to the substantive issue of whether Balcor had a sufficient security interest in the Rents for them to qualify as cash collateral. In general, funds acquired by the estate after commencement of bankruptcy proceedings are not subject to security interests arising from an agreement entered into prior to commencement of bankruptcy proceedings. 11 U.S.C. § 552(a). If funds are cash collateral, however, then such funds may be subject to a pre-existing security interest, even if those funds are acquired after commencement of bankruptcy proceedings. Thus, if the Rents are cash collateral, the Trustee may not use the Rents absent plaintiff's consent. Balcor's security interest is disputed, however, because it did not have an enforceable right to the Rents at the time of the bankruptcy filing as Associates instituted bankruptcy proceedings before an Event of Default occurred.

Section 363 of the Bankruptcy Code defines cash collateral as:

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). Thus, rents are cash collateral when they are subject to a security interest as provided in section 552(b). Section 552(b) provides that:

> if the debtor and [a secured party] entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents ... then such security interest extends to such ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law.

*Id.* at § 552(b).[1] Thus, this section creates an exception to the general rule that funds

---

1. Congress amended this section for proceedings instituted after October 22, 1994. Because this

acquired by the estate after commencement of bankruptcy proceedings are not subject to security interests arising from an agreement entered into prior to commencement of bankruptcy proceedings. *Id.; see also In re Vienna Park Properties,* 976 F.2d 106, 111–12 (2d Cir.1992).

■ The relevant inquiry, therefore, is whether Balcor had a valid security interest in the Rents before Associates instituted the bankruptcy proceeding. *See In re Vienna Park Properties,* 976 F.2d at 112; *In re Carmania Corp.,* 154 B.R. 160, 163 (S.D.N.Y. 1993). More specifically, following the Second Circuit's holding in *Vienna Park,* the relevant inquiry is not whether the alleged security interest was enforceable. Rather, to constitute cash collateral under section 363, the security interest need only have been perfected. *In re Vienna Park,* 976 F.2d at 113; *see also In re Carmania Corp.,* 154 B.R. at 164 ("the current enforceability of the Bank's security interest in the rents does not determine cash collateral status under Section 363"); *In re Northport Marina Assocs.,* 136 B.R. 911, 919–20 (Bankr.E.D.N.Y.1992) (an interest under § 363 requires a perfected security interest, not an enforceable security interest); *In re Rancourt,* 123 B.R. 143, 148 (Bankr.D.N.H.1991) (same).

■ Because the Property is located in New York, the applicable law is New York law. *See Butner v. United States,* 440 U.S. 48, 51–54, 99 S.Ct. 914, 916–18, 59 L.Ed.2d 136 (1979). Under New York law, rents are considered real property and thus a security interest in rents is perfected upon recordation. *In re Financial Center Assocs.,* 140 B.R. 829, 831 (Bankr.E.D.N.Y.1992) (*citing* N.Y.Real Prop.Law §§ 291, 294–a (McKinney 1989 & 1991 Supp.)). Here, it is undisputed that Balcor recorded both the Mortgage and the Assignment of Rents agreements in 1987. Thus, Balcor's security interest in the Rents was perfected four years before Associates instituted bankruptcy proceedings.

Attempting to distinguish *Vienna Park,* the Trustee notes that no Event of Default occurred prior to commencement of the

case was filed on February 25, 1994, this amend-

bankruptcy proceedings. The Trustee rightfully states that Balcor did not have a right to possession of the Rents prior to the bankruptcy proceeding. This distinction has no relevance, however, to the issue of whether the Rents constitute cash collateral. *See In re Cerrico Realty Corp.,* 127 B.R. 319, 323 (Bankr.E.D.N.Y.1991) ("The fact that the Bank did not give the Debtor the requisite five days notice that it was revoking its waiver, does not alter the fact that the rent is cash collateral and hence the Debtor must obtain the Bank's consent or the permission of this court before using those funds."). As discussed above, the cases interpreting section 363 have plainly stated that a party's interest in rents need not be enforceable for the rents to constitute cash collateral. The interest need only be a perfected security interest. *See, e.g., In re Vienna Park,* 976 F.2d at 113; *In re Carmania Corp.,* 154 B.R. at 164. Accordingly, because Balcor had a perfected security interest in the Rents, they constitute cash collateral under § 363 from the time that the bankruptcy proceeding commenced. Under the terms of the Rents Stipulation and the Bankruptcy Court's October 1993 order, the Rents at issue are contained in the Chemical Reserve Account. Thus, the Trustee has no right to use, sell, or lease the funds in the Chemical Reserve Account absent plaintiff's consent. 11 U.S.C. § 363(c)(2).

### C. *Enforceability of Plaintiff's Interest in the Rents*

■ The final issue is whether plaintiff now has a present right to take possession of its cash collateral. Plaintiff may collect the Rents if it has an enforceable security interest in the Rents under New York law. *See In re Vienna Park,* 976 F.2d at 114. Under New York law, an assignment of rent clause in a mortgage operates merely as a pledge of rents, not as a direct conveyance. *In re Pine Lake Village Apartment Co.,* 17 B.R. 829, 833 (Bankr.S.D.N.Y.1982). Similarly, the existence of a separate assignment of rents does not create an automatic conveyance of the rents if the assignment is made as further security for the mortgage debt.

ed section is inapplicable.

See One Hundred Forty–Eight Realty Co. v. Conrad, 125 Misc. 142, 210 N.Y.S. 400, 404–05 (2d Dep't 1925); Kelley Bros. v. Primex Equities Corp., 46 Misc.2d 255, 259 N.Y.S.2d 594, 597 (Onondaga County Sup.Ct.1965). Thus, an assignment of rents becomes enforceable when the assignee takes affirmative steps to assert his rights, such as appointing a receiver to collect the rents, taking possession of the property, commencing foreclosure proceedings, or seeking an order for sequestration of rents. In re Carmania Corp., 154 B.R. at 164–65; In re Northport Marina Assocs., 136 B.R. at 916–17; In re Riverside Nursing Home, 102 B.R. 357, 362–63 (Bankr. S.D.N.Y.1989); In re Pine Lake Village Apartment Co., 17 B.R. at 833; New York Life Ins. Co. v. Fulton Dev. Corp., 265 N.Y. 348, 352, 193 N.E. 169 (1934); Sullivan v. Rosson, 223 N.Y. 217, 225, 119 N.E. 405 (1918).

Here, the Assignment of Rent agreement was entered into merely as additional security for the Loan. Thus, to gain an enforceable interest in the Rents, Balcor was required to take some affirmative steps toward asserting its interest. Balcor has taken such steps. First, Balcor sought an order for sequestration of the Rents as early as 1991. Second, Balcor sought and obtained relief from the automatic stay under the Bankruptcy Code to pursue its claim to the Rents. Third, Balcor instituted an adversary proceeding in the Eastern District of Pennsylvania, seeking to obtain the Rents. Fourth, Balcor instituted a foreclosure action in the Southern District of New York. As a result of this action, the Property has been foreclosed and conveyed to a third party. Under these circumstances, Balcor's interest in the Rents is enforceable. Accordingly, as Balcor's successor, plaintiff has an enforceable interest in the Rents and thus the Trustee must transfer the funds contained in the Chemical Reserve Account to plaintiff.

### CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is granted and the Trustee's motion for summary judgment is denied. Plaintiff shall submit judgment on notice in accordance with Local Civil Rule 8.

SO ORDERED.