U.S. Bank N.A. v MAve Hotel Invs. LLC (2025 NY Slip Op 02140)

U.S. Bank N.A. v MAve Hotel Invs. LLC

2025 NY Slip Op 02140

Decided on April 10, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 10, 2025

Before: Singh, J.P., González, Scarpulla, Rosado, O'Neill Levy, JJ. 

Index No. 652277/23|Appeal No. 3648|Case No. 2024-00285|

[*1]U.S. Bank National Association, etc., Plaintiff-Respondent,
v
MAve Hotel Investors LLC, et al., Defendants-Appellants.

Law Office of Robert M. Kaplan, White Plains (Robert M. Kaplan of counsel), for appellants.
Herrick Feinstein LLP, New York (Scott T. Tross of counsel), for respondent.

Order, Supreme Court, New York County (Robert R. Reed, J.), entered on or about December 20, 2023, which, to the extent appealed from as limited by the briefs, denied defendants' motion to dismiss the complaint, modified, on the law, the sixth cause of action for declaratory judgment dismissed, and otherwise affirmed, without costs.
Defendant MAve Hotel Investors LLC (borrower) owns a hotel located at 62 Madison Avenue in Manhattan. Defendant Madison Hospitality Management LLC (manager) manages the property.
In 2013, borrower executed a $22 million loan agreement evidenced by a promissory note secured by a mortgage on the property. The terms of the loan agreement directed borrower to establish and maintain a clearing account with the clearing bank in trust for the benefit of the lender, with the clearing account under the sole dominion and control of the lender. The terms further directed borrower to instruct its tenants to deliver all rents payable directly to the clearing account; borrower and manager were to deposit all rents received into the clearing account. Upon an event of default, in addition to all other rights and remedies available to the lender, the lender could elect to direct the clearing bank to immediately pay over all funds on deposit in the clearing account to the lender. The lender could apply such funds to the payment of the debt in any order in its sole discretion.
In addition to the note and the mortgage, the borrower entered three separate agreements: an assignment of rents and leases, an assignment of management agreement and subordination of management fees, and a deposit account agreement (collectively, Cash Management Agreements). The assignment of rents and leases constituted a present, absolute assignment of rents and leases, and granted borrower a revocable license to collect and receive rents. Together, the Cash Management Agreements required borrower and manager to deposit rents generated by the hotel into the clearing account.
Defendants Salim Assa and Ezak Assa (guarantors) executed a guaranty in favor of the lender. Among other things, the guaranty rendered guarantors liable, after demand, for losses and damages in connection with borrower's "misapplication, misappropriation or conversion" of any awards or any rents.
On October 30, 2013, through a series of assignments, the note, mortgage, guaranty, Cash Management Agreements, and other related agreements were assigned to plaintiff, as trustee, for the Benefit of the Holders of COMM 2013-CCRE12 Mortgage Trust Commercial Mortgage Pass-Through Certificates.
In October 2020, a tenant, Acadia Network Housing, Inc., which had previously occupied all of the hotel's rooms, vacated the property. Borrower and manager sued Acadia for back rent (the Acadia Action). In the present action, plaintiff alleged that Acadia made a substantial settlement payment to borrower and/or manager, and that payment was not deposited into the clearing account.
In January 2021, and [*2]every month thereafter, borrower failed to make the required monthly installment payment. Plaintiff sent borrower a notice of default with an opportunity to cure. After borrower failed to cure, plaintiff accelerated the loan. In December 2021, plaintiff commenced an action in Supreme Court, New York County, against borrower, manager, and guarantors seeking to foreclose on the mortgaged property and recover amounts due under the note and the guaranty.
On May 10, 2023, plaintiff commenced this action against borrower, manager, and guarantors. The first cause of action was for specific performance against borrower and manager, the third cause of action was for breach of the loan agreement against borrower, and the fourth cause of action was for breach of the Cash Management Agreements against borrower and manager. All of these causes of action alleged that borrower and/or manager failed to deposit rents and the Acadia Action award into the clearing account as required by the loan agreement and Cash Management Agreements. The fifth cause of action for breach of guaranty alleged guarantors failed to pay plaintiff damages arising from borrower's breach of the loan agreement and Cash Management Agreements. The sixth cause of action for declaratory judgment sought a judgment declaring that plaintiff is entitled to take possession of any awards borrower might receive in the Acadia Action.
Defendants moved to dismiss the complaint pursuant to CPLR 3211(a)(1), (3), (7), and (8). They argued that RPAPL 1301(3) bars this action because plaintiff commenced a prior foreclosure action to collect on the same debt and did not obtain leave of court to pursue this action. Defendants asserted that the first, third, fourth, and fifth causes of action, premised on borrower's and manager's alleged breaches of the loan agreement and Cash Management Agreements, must be dismissed because plaintiff did not allege that a receiver had been appointed or that it had taken possession of the property and is therefore not entitled to turnover of any rents. As to the fifth cause of action for breach of guaranty, defendants argued that plaintiff failed to allege it made a demand upon guarantors after borrower's breach, and such a demand is a condition precedent to guarantors' liability. As to the sixth cause of action for declaratory judgment, defendants maintained that plaintiff's only claim to a potential award in the Acadia Action was under Section 1.1(i) of the mortgage, but that section only entitles plaintiff to an award from a condemnation proceeding.
Supreme Court denied defendants' motion. The court found that the complaint seeks relief separate and distinct from the mortgage debt, so this action is not barred by RPAPL 1301(3). The court further determined that plaintiff was not required to seek appointment of a receiver or take possession before seeking turnover of rents; it found the receiver or possession requirement involved equitable principles whereas plaintiff's first[*3], third, and fourth causes of action arise from a contract between sophisticated parties. Defendants appealed.
Initially, RPAPL 1301(3) provides that while a foreclosure action is pending or after final judgment for the plaintiff, "no other action shall be commenced or maintained to recover on any part of the mortgage debt . . . without leave of the court in which the former action was brought." Statutes in derogation of a plaintiff's common- law right of action, as RPAPL 1301(3) is, are strictly construed (see Dollar Dry Dock Bank v Piping Rock Bldrs., 181 AD2d 709, 710 [2d Dept 1992]). Here, plaintiff's claims are based upon defendants' alleged breaches of specific obligations in the note, mortgage, and Cash Management Agreements. The obligations in question in this action are separate from defendants' obligation to repay the mortgage debt. Indeed, plaintiff was not obligated to apply funds in the cash management account to the outstanding balance due after borrower defaulted (cf. Shaw Funding, L.P. v Grauer, 98 AD3d 660, 660 [2d Dept 2012]). Accordingly, this action is not barred by RPAPL 1301(3) since it is a separate action to recover for breaches of the loan agreement's nonpayment obligations rather than a separate action "to recover on any part of the mortgage debt" (see RPAPL 1301[3]; Chemical Bank v Evans & Hughes Realty, L.P., 1992 WL 12664253, *3 [Sup Ct, Nassau County 1992]).
Moreover, notwithstanding our colleague's thoughtful dissent, a dismissal at this stage based upon RPAPL 1301(3) would be unwarranted as it is unknown whether the damages sought in this action are duplicative of those sought in the foreclosure action (Manufacturers and Traders Tr. Co. v Bittorf, 216 AD2d 72, 73 [1st Dept 1995]). Whether plaintiff has suffered damages that are duplicative of the foreclosure is a question for a later date.
Next, defendants maintain that plaintiff's failure to seek the appointment of a receiver or take possession of the property following the default precludes plaintiff's claim for possession of rents. We agree with our colleague that a mortgagee is not entitled to collect rents until there has been a default and either a receiver has been appointed or the mortgagee has taken possession of the property due to the equitable lien created by a mortgage (see New York Life Ins. Co. v Fulton Dev. Corp., 265 NY 348, 352 [1934]). Here, however, plaintiff's first, third, and fourth causes of action are not premised upon an assignment of rents or its equitable lien. Instead, those causes of action are based on defendants' alleged failure to deposit rents in the clearing account in accordance with the terms of written contracts between sophisticated parties, i.e., the loan agreement and Cash Management Agreements (cf. Chemical Bank v Evans & Hughes Realty, L.P., 205 AD2d 573, 574 [2d Dept 1994]). Stated differently, no cause of action in the complaint seeks turnover of rents (cf. Chase Manhattan Bank v Brown & E. Ridge Partners, 243 AD2d 81[*4], 83 [4th Dept 1998]; Chemical Bank, 205 AD2d at 574). Consequently, plaintiff's failure to move to appoint a receiver or take possession of the property does not preclude this action to enforce the cash management provisions.
Separately, Supreme Court correctly denied defendants' motion to dismiss plaintiff's fifth cause of action for breach of the guaranty. First, the guaranty rendered guarantors liable for losses and damages in connection with borrower's "misapplication, misappropriation, or conversion" of any awards or rents. Plaintiff's fifth cause of action is not, as defendants argue, based upon tortious conduct; it is based upon guarantors' alleged breach of the guaranty. In any event, plaintiffs are not required to prove borrower's tortious conduct, i.e., misapplication, misappropriation, or conversion, before guarantors' liability is triggered.
Second, defendants argue that plaintiff failed to make a demand upon the guarantors as required under the guaranty. However, the complaint alleged plaintiff had made such a demand and reiterated the demand therein. For purposes of a motion to dismiss, plaintiff sufficiently alleged that it made a requisite demand (see Harris v IG Greenpoint Corp., 72 AD3d 608, 609 [1st Dept 2010]).
Finally, Supreme Court should have dismissed plaintiff's sixth cause of action for declaratory judgment. Plaintiff based this claim upon Section 1.1(i) of the mortgage, entitled "Condemnation Awards." That section contemplates awards from government actions that injure or devalue the property, not awards from private actions such as the Acadia Action (see Popkin v Security Mut. Ins. Co. of N.Y., 48 AD2d 46, 48 [1st Dept 1975]).
We have considered defendants' remaining arguments and find them unavailing.
All concur except Singh, J. who dissents in a separate memorandum as follows:
Singh, J. dissenting,
Both statutory and common law protect defendants against this lawsuit. Lenders on a mortgage may not sue for the debt after bringing a foreclosure action, as plaintiff has. Neither may they collect rents until after appointment of a receiver, which has not occurred. Plaintiff concedes all of this but maintains that these protections do not apply because plaintiff is not seeking to collect the mortgage debt, but is seeking to enforce a specific method of paying the mortgage debt, for damages that can only be the amount due under the mortgage debt. Put simply, plaintiff insists that it isn't enforcing a mortgage because the contract says that it is not. This Court should not accept that argument. Such circumlocutions do not — and, under New York law, cannot — change the nature of the contract or of the relief being sought. Even if we were to indulge plaintiff's theory, violation of those provisions has not actually caused plaintiff any damages. I respectfully dissent.
Facts
Plaintiff seeks to collect a debt due it according to the terms of a mortgage. Its predecessor in interest loaned money to a hotel owner, defendant [*5]MAve Hotel Investors. To repay the loan, MAve executed a mortgage and an assignment of leases and rents. Defendants Salim and Ezak Assa guaranteed certain obligations under the loan. These documents were later assigned to plaintiff, which now seeks to enforce them.
The loan documents contained a "lockbox" provision. The loan agreement required MAve to establish a "Clearing Account," to direct nonresidential tenants to deliver payments to that account, and to deposit all "Rents" into that account. The deposits in this account were to be transferred immediately to a "Cash Management Account" under plaintiff's control. Upon default, plaintiff could "direct Clearing Bank to immediately pay over all funds on deposit in the Clearing Account to Lender and to apply any such funds to the payment of the Debt in any order in its sole discretion." The money in the Cash Management Account would be applied to the debt obligations in a specified order, unless MAve defaulted, at which point "all funds on deposit in the Cash Management Account may be applied by Lender in such order and priority as Lender shall determine in its sole discretion." These requirements were emphasized in related agreements. During oral argument, plaintiff conceded that the rent payments effected by the lockbox were "assigned for the purpose of paying the debt."
Plaintiff alleges that MAve ceased to comply with the lockbox provisions in or about October 2020 and defaulted entirely on January 6, 2021. On December 16, 2021, plaintiff sued in Supreme Court to foreclose on the property and recover the money due. On May 10, 2023, plaintiff filed this suit.
Discussion
New York law is clear that a mortgage is, in fact, a mortgage. However much the parties may deflect to say it is something else, a court "looks beyond the terms of the instrument to the real transaction, and when it is shown to be one of security . . . [the court] will give effect to the actual contract of the parties" (Mooney v Byrne, 163 NY 86, 92 [1900] [internal quotation marks omitted]). The transaction here is a security. Plaintiff admitted as much below. We should treat it as what it is.
Plaintiff May Not Seek to Recover Mortgage Debt After Foreclosing on the Mortgage
After a party has filed an action to foreclose on a mortgage, "no other action shall be commenced or maintained to recover any part of the mortgage debt . . . without leave of the court in which the former action was brought" (RPAPL 1301 [3]). Plaintiff has indisputably filed an action to foreclose the mortgage. It now seeks to recover the mortgage debt. It does not claim to have leave of court to bring this separate action. "Since this action is an action to recover funds under the same mortgage debt sought to be recovered in the separate pending mortgage foreclosure action, and since the plaintiffs failed to obtain leave of court in that action pursuant to RPAPL 1301 (3)," this action is barred (Shaw Funding, L.P. v Grauer, 98 AD3d 660, 660 [2d Dept 2012[*6]] [applying RPAPL 1301 (3) where documents established that recovered rents were to be deducted from debt secured by mortgage][FN1]; cf. TBS Enters. v Grobe, 114 AD2d 445, 446-447 [2d Dept 1985] [finding that note and guaranty executed with and incorporated in mortgage modification were part of mortgage debt under RPAPL 1301 (3)], lv denied 67 NY2d 602 [1986]).
Plaintiff argues that it is not actually seeking to recover the mortgage debt. Rather, it asserts, it is seeking to enforce the lockbox provision. Plaintiff argues, and the majority agrees, that a cause of action for violation of the lockbox provision is separate from recovery of the mortgage debt (cf. Manufacturers & Traders Trust Co. v Bittorf, 216 AD2d 72 [1st Dept 1995] [denying summary judgment under RPAPL 1301 (3) where the defendant fraudulently concealed information from the plaintiff and the asserted damages were the decline in the property value]). Yet, neither plaintiff nor the majority cites any First Department cases that are on point. The majority relies on a trial court decision, Chemical Bank v. Evans & Hughes Realty (1992 WL 12664253, *3 [Sup Ct, Nassau County 1992]). Significantly, no court has ever cited this lower court case to support the majority's conclusion. Moreover, Chemical Bank was incorrectly decided. Neither case it cites supports its conclusion that specific covenants for methods of payment vitiate the protections to which a mortgagor is otherwise entitled (see Long Is. City Sav. & Loan Assn. v Gottlieb, 58 NY2d 931 [1983] [neither payment of mortgage indebtedness nor Debtor & Creditor Law § 278 precludes cause of action under unspecified circumstances involving allegedly fraudulent transfer of real property]; Brayton v Pappas, 52 AD2d 187, 189 [4th Dept 1976] [demolition of buildings on property did not grant right to foreclose on mortgage but may have given rise to other causes of action]). That conclusion would entirely undermine the purpose of RPAPL 1301 (3), namely, "to shield the mortgagor from the expense and annoyance of two independent actions at the same time with reference to the same debt"(Central Trust Co. v Dann, 85 NY2d 767, 772 [1995] [internal quotation marks omitted]).
More broadly, Chemical Bank is inconsistent with New York's approach to mortgages, which "looks beyond the terms of the instrument to the real transaction" (Mooney, 163 NY at92 [internal quotation marks omitted]). "Because New York operates under a lien theory as opposed to a title theory with respect to mortgages, the language used in the assignment instrument itself is not determinative of what rights are actually transferred" (LT Propco, LLC v Carousel Ctr. Co., L.P., 68 AD3d 1695, 1696 [4th Dept 2009] [internal quotation marks omitted], lv dismissed 15 NY3d 742 [2010]). "If the instrument is in its essence a mortgage, the parties cannot by any stipulation, however express and positive, render it anything but a mortgage" (Mooney, 163 NY at 93 [internal quotation marks omitted[*7]]). For all plaintiff's assertions that the lockbox provision is separate from the mortgage, "upon reviewing [the parties' agreements] as a whole . . . it is clear therefrom that the assignment of any rights to the mortgagees was for the purpose of securing the repayment of debt owed" (LT Propco, 68 AD3d at 1696). Therefore, the lockbox provisions merely restate the mortgage debt, and RPAPL 1301 (3) applies (see Shaw Funding, 98 AD3d at 660).
The practical effect of accepting plaintiff's argument would be that RPAPL 1301 (3) could be evaded through formalism. Perhaps recognizing the sophistry of that argument, the parties' agreements also included — and plaintiff now asserts — an express waiver. We have not ruled on whether RPAPL 1301 (3) can be waived. Some lower courts have held that it cannot (see Orchard Hotel, LLC v Zhavian,34 Misc 3d 1219[A], 2012 NY Slip Op 50180[U], *16 [Sup Ct, Kings County 2012]). So would I. Any other conclusion "would be antithetical to the purpose and policy reflected in RPAPL 1301 (1)" (Golden Resources, LLC v Seddio, 2022 NY Slip Op 31846[U], *6 [Sup Ct, Kings County 2022]). "[A] party cannot, in advance, make a valid promise that a statute founded in public policy shall be inoperative" (Deutsche Bank Natl. Trust Co. v Flagstar Capital Mkts., 32 NY3d 139, 151 [2018] [internal quotation marks and alterations omitted]).
Plaintiff Is Not Entitled to Rents
Even if plaintiff could bring this lawsuit, it could not recover even nominal damages. It is "well recognized" that a property owner is entitled to be paid rent "until there is a default under the mortgage, then the mortgagee has an equitable claim to the rents that are unpaid" (New York Life Ins. Co. v Fulton Dev. Corp.,265 NY 348, 351 [1934] [emphasis added]). The lender's equitable claim — that is, its lien — "dates only from the appointment of the receiver, and his right to collect rents extends only to such as are unpaid at the time of his appointment" (id. [internal quotation marks omitted]). Plaintiff does not contend that the assignment of rents overcomes these "fundamental principles" (id.), which it does not (see e.g. 641 Ave. of the Ams. L.P. v 641 Assocs., Ltd., 189 BR 583, 590-591 [Bankr SD NY 1995]).
Instead, plaintiff reiterates that the lockbox provisions are independently enforceable agreements entirely separate from the mortgage. This argument fails again, for the same reasons. "If the instrument is in its essence a mortgage, the parties cannot . . . deprive it of the essential attributes belonging to a mortgage in equity" (Mooney, 163 NY at 93 [internal quotation marks omitted]).
In finding otherwise, the majority lacks even a single case to support its position. Indeed, the majority relies on a Second Department decision, Chemical Bank v Evans & Hughes Realty, that also has never been cited by courts for the majority's purpose (205 AD2d 573 [2d Dept 1994]). The Appellate Division found that the property owner was not entitled to rents collected [*8]prior to the appointment of a receiver (see id. at 574-575). This case does not support the majority's position. Rather, courts have cited Chemical Bank for the proposition that "a receiver" — and necessarily, by extension, a lienholder — "has no right to accrued rent that has been collected by or on behalf of the owner prior to the receiver's appointment" (Chase Manhattan Bank v Brown & E. Ridge Partners, 243 AD2d 81, 83 [4th Dept 1998]; see also Leeber Realty LLC v Trustco Bank, 2019 WL 498253, *11, 2019 US Dist LEXIS 20885, *33 [SD NY, Feb. 8, 2019, No. 17-CV-2934 (KMK)] ["the Receiver was not authorized to collect rents due until he filed his oath and bond"], affd 798 Fed Appx 682 [2d Cir 2019]). Similarly, here, irrespective of the lockbox provision, plaintiff may not collect rents until the appointment of a receiver.
To say that these cases are inapplicable because plaintiff does not seek turnover of rent begs the question. After choosing to pursue foreclosure rather than enforcement, plaintiff nevertheless seeks to enforce the requirement that defendants "immediately pay over" — that is, turn over — "all funds [that should be] on deposit in the Clearing Account" — Rents — "to [plaintiff]." That plaintiff does not use the words "turnover of rents" does not change that it seeks exactly that. Arguments otherwise are not only specious, they would render meaningless any that protects the rights of mortgagors.
Plaintiff Has Suffered No Damages
Assuming for argument's sake that this suit is not procedurally barred, and that plaintiff is entitled to collect the rents, what damages is plaintiff entitled to collect based on violation of the lockbox provision? The only conceivable injury plaintiff could claim would be the loss of access to funds that should have been deposited into the Clearing Account. The measure of that injury would be the value of those funds. That value, however, would be the amount necessary to pay off the mortgage debt. The majority assumes that some other form of damages might be available but does not explain what it could be.
In short, the only possible damages are the money due under the mortgage. Plaintiff could recover that money by enforcing the mortgage. In seeking to foreclose, it has already done that. It has not been injured a second time just because defendants agreed twice to repay a single debt.
Conclusion
Plaintiff is not entitled to rents before the appointment of a receiver. It has not been damaged by the precise manner in which in which defendants failed to pay the same debt it is enforcing in another proceeding. And that proceeding bars this one under RPAPL 1301 (3). I would reverse Supreme Court's order and dismiss the complaint.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 10, 2025

Footnotes

Footnote 1: Shaw Funding is on point. The majority contends that, once MAve defaulted, plaintiff was permitted to cease reducing the debt by the funds in the Cash Management Account. The loan agreement states that, on default, "all funds on deposit in the Cash Management Account may be applied by Lender in such order and priority as Lender shall determine in its sole discretion." Reading this language in the context of the entire agreements, however, it clearly freed plaintiff only from the obligation to apply those funds in the specified order and priority.